[S. F. No. 11731.    In Bank.—December 29, 1925.]

VITAGRAPH, INC. (a Corporation), Respondent, v. LIB-
ERTY THEATRES CO. OF CALIFORNIA (a Corpo-
ration), Appellant.

[1] CONTRACTS — EXECUTION ON BEHALF OF CORPORATION — PART PER-
FORMANCE—RETENTION OF BENEFITS.—Where the written contract
entered into between a distributor of photo-plays and a corporation
exhibitor of such plays is signed in behalf of said distributor by
its salesman and also countersigned by its branch manager and the
manager of its sales promotion department, and the president and
general manager of said corporation distributor affixes his signature
to said contract as "Exhibitor," and the transaction is evidently
one in the ordinary course of said corporation's business, although
not signed in its corporate name, and the parties recognize the
contract as being in existence and act under it for a period of
several months, and said corporation exhibitor receives and retains
some of the benefits accruing to it thereunder, it is in no position
to insist upon the strictest proof of its due execution when sued
for damages for a breach thereof.

[2] ID.—THREATENED BREACH—MITIGATION OF DAMAGES—BURDEN OF
PROOF.—In a case where injury or damage to a plaintiff's property
is threatened as the result of a tort or breach of contract by
another, the duty rests upon the plaintiff to use reasonable care
and diligence to protect his property against such threatened loss
or injury, and if he fails to do so he will not be permitted to
charge the defendant for that portion of his loss or injury which
was due to plaintiff's own neglect in this behalf; but, in cases in
which such rule is applicable, the burden is upon the defendant to
prove the facts in mitigation of damages.

[3] ID.—RENTAL OF FILMS—BREACH OF CONTRACT—PRIMA FACIE CASE
—EVIDENCE—FINDINGS.—In this action by the distributor of photo-
plays to recover as damages the agreed rental value of certain
films, when plaintiff proved the contract, the performance thereof
by the delivery of the films, and defendant's refusal to pay there-
for, it established at least a *prima facie* case entitling it to recover
the amount which defendant had agreed to pay for the films, and
it was then for defendant to prove facts in mitigation of those
damages, and where defendant did not do this, the trial court was
justified in finding that, after the films were rejected by defendant,

1.    See 6 Cal. Jur. 229.
2.    See 8 Cal. Jur. 782.
3.    Damages for breach of moving picture distribution contract,
note, 19 A. L. R. 1004.

plaintiff by the exercise of reasonable care could not have leased or sublet or hired to others the pictures or any part thereof which were refused by defendant, even though there had been no evidence whatever upon that issue.

[4] ID.—UNPRODUCED PHOTO-PLAYS—ANTICIPATORY BREACH—MEASURE OF DAMAGES—PLEADING—PROOF.—Assuming that defendant's notice to plaintiff that it would not accept or pay for certain remaining photo-plays to be produced would give rise to an action to recover damages as for an anticipatory breach with respect to such photo-plays, the measure of damages recoverable therefor would be governed by section 3300 of the Civil Code; and plaintiff's pleading and proof in this action to recover damages for such photo-plays were insufficient to sustain an award under that section.

[5] ID. — ABANDONMENT OF CONTRACT — MEASURE OF DAMAGES.—Such an action to recover damages for anticipatory breach of contract would proceed upon the theory that the contract had been abandoned, and the measure of damages would be the difference between the amount agreed to be paid by defendant and the value to the plaintiff of the license and use of the films covered by the contract.

[6] ID.—CONTINGENT RIGHT OF TERMINATION—WANT OF MUTUALITY—EXECUTED CONTRACT.—The fact that a contract for the licensing and use of photo-plays gives the distributor the right to terminate the agreement upon the happening of numerous contingencies beyond its control does not render the contract void for want of mutuality; and want of mutuality is never a defense as to an executed contract.

---

(1) 13 C. J., p. 777, n. 3. (2) 17 C. J., p. 767, n. 24, p. 1025, n. 62. (3) 17 C. J., p. 1042, n. 28. (4) 13 C. J., p. 654, n. 68. (5) 17 C. J., p. 858, n. 49. (6) 13 C. J., p. 334, n. 43.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Reversed.

The facts are stated in the opinion of the court.

·Lindsay & Conley and Carl E. Lindsay for Appellant.

Milton A. Nathan for Respondent.

MYERS, C. J.—Plaintiff, a distributor of photo-plays, entered into a contract with defendant, an exhibitor of such plays, whereby plaintiff agreed to deliver to defendant the films of six certain photo-plays to be thereafter produced,

---

4. See 8 Cal. Jur. 820.

and to license defendant to exhibit each of them in turn for a period of one week, and defendant agreed to pay therefor the sum of three hundred dollars for each such picture, payable one week in advance of the exhibition thereof. These payments were evidently to be made for the license to exhibit these photo-plays together with the loan and use of the films for that purpose. Defendant accepted, used, and paid for the first two photo-plays which were produced and delivered to it, but refused to accept the third and fourth, and when the films thereof were sent to defendant it returned them to plaintiff without exhibiting them and notified plaintiff that it would not accept the remaining two photo-plays provided for in the contract. Thereupon plaintiff brought this action to recover twelve hundred dollars damages for the breach of the contract, being three hundred dollars each for the third and fourth films which had been tendered and refused and three hundred dollars each for the fifth and sixth films, which had not been tendered at the time the action was commenced. At the trial the action was dismissed as to all defendants other than the Liberty Theatres Company of California, a corporation, and plaintiff recovered judgment against this defendant for the full amount sued for, except that it was not awarded interest upon the principal sum thereof as prayed for in its complaint. The defendant appeals from the judgment and urges as grounds for reversal: First, that there was no proof that the contract sued upon was ever executed, either by the respondent or by the appellant; second, that no effort was made by the respondent to minimize its loss or damage after the alleged breach of the contract sued upon; third, that the contract sued upon is lacking in mutuality, and is therefore unenforceable; and, fourth, that the judgment is excessive.

[1] The contract, which was in writing, purported by its terms to be entered into by and between the respondent as party of the first part and the appellant as party of the second part. It was signed in behalf of respondent by its salesman and countersigned by its branch manager and also countersigned by the manager of its sales promotion department. It was signed also by the president and general manager of the appellant corporation and was evidently a transaction in the ordinary course of appellant's business. It was not signed in the corporate name of appellant, how-

ever, but its president and general manager merely affixed his own signature thereto as "Exhibitor." It may be conceded that the evidence is insufficient to directly establish antecedent authorization for the execution of this contract by the respective corporations and also that the purported execution thereof° is technically defective. On the other hand, the evidence shows that both parties recognized the contract as being in existence and acted under it for a period of several months. Each of the parties performed the contract according to its terms up to the time of the delivery of the third film, which was nearly eight months after the date of signing of the contract. Both parties having recognized and acted under the contract in the part performance thereof, the appellant, having received and retained some of the benefits accruing to it thereunder, is in no position to insist upon the strictest proof of its due execution. (*Reedy* v. *Smith*, 42 Cal. 245; *Bloom* v. *Hazzard*, 104 Cal. 310 [37 Pac. 1037]; *Sparks* v. *Mauk*, 170 Cal. 122 [148 Pac. 926].)

[2] Under its second point appellant contends that when it breached the contract by refusing to accept and pay for the films, it then became respondent's duty to make every effort to lease those films to some other exhibitor and to obtain as much rental as possible therefor; that the measure of respondent's damages would be limited to the amount of the difference between the amount of rental which could have been thus obtained and the amount which the appellant had agreed to pay; and that the respondent having failed to produce any evidence upon this subject is not entitled to recover any damages whatsoever. Appellant invokes the rule sometimes referred to as the duty of minimizing damages. It is a recognized rule of law that in a case where injury or damage to a plaintiff's property is threatened as the result of a tort or breach of contract by another, the duty rests upon the plaintiff to use reasonable care and diligence to protect his property against such threatened loss or injury, and if he fails to do so he will not be permitted to charge the defendant for that portion of his loss or injury which was due to plaintiff's own neglect in this behalf. This rule has been repeatedly recognized and applied in this state as well as elsewhere. For example, in *Mabb* v. *Stewart*, 147 Cal. 413 [81 Pac. 1073], where the

defendant wrongfully deprived the plaintiff of water which was required for the irrigation of her orchard, the plaintiff stood by and permitted her trees to die for want of water, when she could easily have procured the necessary water elsewhere at a relatively small expense, and this court held that it was her duty under such circumstances to minimize her damage by procuring the water elsewhere, and thus to save her trees, and that her recovery was limited to the amount which it would have cost her to do so. The real basis of this conclusion is that the loss of the trees was the proximate result not of the defendant's original wrong, but of plaintiff's subsequent neglect.

In the case of *Alaska Salmon Co.* v. *Standard Box Co.,* 158 Cal. 567 [112 Pac. 545], the defendant had contracted to furnish the plaintiff with boxes for the packing of its fish product. The boxes furnished were not up to the standard of the contract, but plaintiff accepted and used them and thereafter brought action for damages. Defendant contended that by the acceptance and use of the boxes plaintiff estopped itself to recover damages, but this court pointed out that it was the duty of the plaintiff to use the boxes under the circumstances in order to minimize the damages, because to do otherwise would have resulted in the loss of its fish product, and would thus have enormously increased the damage. In that connection this court said: "A plaintiff where a defendant has violated his contract, is charged with the general duty of doing every reasonable thing to minimize his own loss and thus reduce the damages for which defendant has become liable by his breach." So, also, in the case of *Ash* v. *Soo Sing Lung,* 177 Cal. 356 [170 Pac. 843], plaintiff had sold his crop of fruit on the trees to defendant, who agreed to prop the limbs so as to prevent them from breaking under the weight of the fruit. Defendant having failed to do so, it was held that the duty rested upon the plaintiff, after knowledge of defendant's breach, to use ordinary care and diligence to protect his trees from further injury, and that if he failed to do so he could not charge the defendant with such portion of the loss as resulted proximately from his own subsequent neglect. No case has been called to our attention wherein this rule as to the duty to minimize the damages has been applied to a situation in which the defendant's breach of duty consisted

solely of the failure or refusal to pay a liquidated sum of money when due, and it may perhaps be doubted that the rule is applicable to such a case. It would seem that the situation of the respondent is in this respect analogous to that of a lessor whose lessee has repudiated the lease and given notice that he will not perform it. It is held in such case that the lessor may elect to stand upon his contract and may recover the full rent for the term, when it has become due, in accordance with the terms of the contract, or he may elect to treat the contract as abandoned and relet the premises to another tenant, in which event he can recover as damages only the difference between the rent he was to receive and the rent actually received from the subsequent tenant (*Respini* v. *Porto*, 89 Cal. 464 [23 Am. St. Rep. 488, 26 Pac. 967]; *Bradbury* v. *Higginson*, 162 Cal. 602 [123 Pac. 797]). If this analogy is sound it follows that the respondent herein had a right to stand upon its contract and to recover the full amount which had become due thereunder in accordance with its terms. (Civ. Code, sec. 3302.) Assuming, however, the applicability to the present case of the rule which requires an injured party to minimize the damages, the appellant is not benefited thereby herein, at least in respect of the amount awarded on account of the third and fourth photo-plays. The cases which recognize and give application to this rule uniformly hold that the burden of proof is upon the defendant to prove the facts in mitigation of damages. (*Crosby* v. *Plummer*, 111 Me. 355 [89 Atl. 145]; *Milage* v. *Woodward*, 186 N. Y. 252 [78 N. E. 873]; *Tradesman Co.* v. *Superior Mfg. Co.*, 147 Mich. 702 [111 N. W. 343]; *Alderson* v. *Houston*, 154 Cal. 1, 10, 16 [96 Pac. 884]; *Seymour* v. *Oelrichs*, 156 Cal. 782, 802 [134 Am. St. Rep. 154, 106 Pac. 88]; 1 Sedgwick on Damages, 9th ed., p. 447; 17 Cor. Jur. 1025.) [3] When respondent proved the contract, the performance thereof by the delivery of the third and fourth films, and appellant's refusal to pay therefor, it established at least a *prima facie* case entitling it to recover as damages the amount which appellant had agreed to pay for those films. (*Alderson* v. *Houston*, 154 Cal. 10 [96 Pac. 884].) It was then for the appellant to prove facts in mitigation of those damages, and this it did not do. It is generally held to be the duty of the defendant to plead the facts in mitigation of damages if

he would rely thereon, and this the appellant did not do. The trial court did, nevertheless, make a finding "That said plaintiff by the exercise of reasonable care and diligence could not have leased or sublet or hired to others the pictures or any part thereof which were refused by said defendant. . . . " Appellant asserts that this finding is unsupported by the evidence. There is some slight evidence to sustain it. One of the witnesses testified that when the films were rejected by appellant it was then too late to arrange with any other exhibitor for their exhibition, but if there was no evidence whatever upon this issue the finding would still be sustained by the evidence under the rule that where no evidence is produced upon an issue the finding thereon must be against the party upon whom rests the burden of proof.

As to the fifth and sixth photo-plays, we are of the opinion that this action is premature, and that the respondent is not entitled to recover therefor herein. At the time this action was commenced those films had not been delivered or tendered to the defendant and under the terms of the contract no payment therefor had become due from the defendant. Respondent points out that before the commencement of the action appellant notified it that it would not accept or pay for the remaining films and respondent suggests that its complaint herein is sufficient to state a good cause of action for an anticipatory breach of contract (*Roehm* v. *Hoerst*, 178 U. S. 1 [44 L. Ed. 953, 20 Sup. Ct. Rep. 780, see, also, Rose's U. S. Notes] ; *Select Pictures Corp.* v. *Australasian Films*, 260 Fed. 296). It may be doubted that an action for damages for an anticipatory breach will lie in a case where there are executory covenants unperformed on the part of the plaintiff which are precedent to those which have been repudiated by the defendant, the performance of which has not been *prevented* by the defendant (*Bradbury* v. *Higginson*, 162 Cal. 609 [123 Pac. 797]). As this question has not been briefed or argued herein we shall not undertake to pass upon it. [4] Assuming that under the circumstances of the present case an action would lie to recover damages as for an anticipatory breach with respect to the fifth and sixth pictures, the measure of the damages recoverable therefor would be governed by section 3300 of the Civil Code, and we are of the opinion that respondent's pleading and proof is insufficient to sustain an award under

that section. [5] Such an action would proceed upon the
theory that the contract had been abandoned, and the meas-
ure of recovery would be the difference between the amount
agreed to be paid by defendant and the value to the plain-
tiff of the license and use of the films covered by the con-
tract. There was neither allegation nor proof directed to
this issue with relation to the fifth and sixth photo-plays.
Neither was there with respect to these any allegation or
proof of the readiness or ability of the plaintiff to perform.
The complaint was framed upon the theory that the plaintiff
had fully performed the entire contract. The trial court
so found, but this finding, in its relation to the last two
photo-plays, is contrary to the evidence. We find no merit
in appellant's suggestion that the contract herein should
be construed as providing for the leasing or licensing of but
three films instead of six.

[6] In support of its contention that the contract is so
lacking in mutuality as to be unenforceable, appellant points
to a long list of contingencies specified in the contract upon
the happening of any one of which the respondent is au-
thorized to terminate the agreement. Appellant asserts that
because of these provisions the contract "is so one sided that
to all intents and purposes the respondent had the right
under its terms to terminate the agreement at its option,
while no such right or privilege was granted to the dis-
tributor." If this were the fact we are cited to no au-
thority which would support the conclusion that the contract
is thereby rendered void, but it is not the fact. Each of
the contingencies upon the happening of which the respond-
ent has the right to terminate the agreement is predicated
on a happening beyond the control of the respondent. More-
over, want of mutuality is never a defense as to an executed
contract and even though the contract herein were utterly
one-sided, the want of mutuality was cured in so far as the
third and fourth films are concerned by the performance of
the contract on the part of the respondent.

It follows from what has been said that the respondent is
entitled to recover herein the amount agreed to be paid for
the third and fourth photo-plays, while as to the fifth and
sixth, the action herein is premature. While there is no
occasion apparent for a retrial of any of the issues of fact
herein, this court cannot make findings of fact and must

therefore remand the cause. . Upon the going down of the *remittitur* the trial court may revise its findings of fact and conclusions of law in accordance with the conclusions herein expressed, either upon the evidence heretofore received herein or upon such further evidence as it may see fit to receive.

The judgment is reversed.

Shenk, J., Seawell, J., Waste, J., Richards, J., Lawlor, J., and Lennon, J., concurred.