[Civ. No. 15985.   First Dist., Div. One.   Nov. 24, 1954.]

J. A. FOLGER AND COMPANY (a Corporation), Respondent, v. GEORGE WILLIAMSON et al., Defendants; GEORGE B. PLANT, Appellant.

Leon Schiller and Rudolph J. Scholz for Appellant.

Pillsbury, Madison & Sutro, Francis N. Marshall, John B. Bates and G. H. Eckhardt, Jr., for Respondent.

WOOD (Fred B.), J.—Plaintiff J. A. Folger and Company, a corporation, recovered judgment in the sum of $4,034.64 (the value of 198 cases of coffee) from defendants George Williamson and George B. Plant, individually and as partners doing business under the name of International Freightways. Plant has appealed, claiming that certain of the findings of fact are without support in the evidence.

It appears without dispute that for several years until at least September, 1949, Williamson and Plant were engaged in the transportation and storage business as partners under the name of International Freightways. In the latter part of 1947 they entered into a contract with plaintiff to haul coffee from San Francisco to Los Angeles and to distribute it to consignees there, a contract which ended December 1, 1949. In February, 1950, a new contract, dated as of December 1, 1949, was signed. Later 198 cases of coffee received by International Freightways were lost, probably misdelivered by Freightways to some person not a consignee of plaintiff.

Plant claims: (1) the defendant partnership had no existence after September, 1949, and was not a party to the contract which was signed in February, 1950; (2) even if the partnership were a party to that contract, it was illusory for lack of mutuality and, therefore, void; (3) even if the partnership were a party to that contract, there was later a change in the relationship and dealings between the parties, with the result that the coffee in question was not delivered under or pursuant to the contract.

■ (1) *The evidence supports the findings that insofar as their business transactions with plaintiff were concerned there was no effective termination of the partnership of Plant and Williamson* doing business as International Freightways; that *as between defendants and plaintiff Richard G. Horne had ostensible authority to act as the agent of the defendants* during the times here involved *and that in February, 1950, defendants Plant and Williamson,* a partnership doing business under the name of International Freightways, *entered into a transportation and warehousing contract with plaintiff, dated and effective December 1, 1949.*

There is evidence that in September, 1949, Plant, Horne

and Williamson formed a corporation of the name "International Freightways"; that shortly thereafter the partnership of the same name was dissolved; and the corporation thereafter for some time operated the business which the partnership had been conducting. But there is also evidence that no notice of dissolution was published pursuant to section 15035.5 of the Corporations Code, and no notice of dissolution of the partnership, formation of the corporation or other change in the relationship of the parties or in the conduct of the business was given to plaintiff or its representatives, at least until long after the execution of the new contract in February, 1950. There is also evidence that in the summer of 1949 Williamson and Plant introduced Horne to Cedric G. Woodard, plaintiff's traffic manager, informing Woodard that Horne had bought in and was to take over the position of accountant for International Freightways, and for Woodard to get in touch with Horne on International Freightways' business in San Francisco. Thereafter Woodard transacted a great deal of business with Horne.

February 20, 1950, Woodard wrote a letter to International Freightways, attention of Horne, enclosing a new contract, stating among other things, "You will note that we have dated this back to December 1, 1949, in order to protect the hauling done in January and February, 1950, at which time your old contract had expired" and asking "would you please check this contract and if suitable to you, simply sign and retain this original for your files. We would then request you to sign the duplicate for our files which may be done at your convenience." This contract was in terms between "J. A. Folger & Co., a corporation" and "George Williamson and George B. Plant, doing business under the firm name and style of 'International Freightways.' " The duplicate was returned in due course to Woodard, signed "International Freightways (Carrier) by R. G. Horne."

Horne testified that Williamson gave him this contract stating it was a renewal of the contract the partnership had had with plaintiff and that it had to be reexecuted on behalf of the corporation and that he, Horne, signed. Williamson testified that the contract was mailed to him in Los Angeles; that he brought it back to San Francisco, and gave it to Horne to sign as Horne handled all the signing of the papers.

This evidence amply supports the findings in question.

(2) *Was the contract of December 1, 1949, illusory and void for want of mutuality?*

▮ By this contract the plaintiff agreed "to tender or cause to be tendered to the Carrier, for transportation between San Francisco and other places in the State of California, as many of its shipments as its general business and market conditions will warrant, during the life of this contract," and the partnership agreed "to accept, transport and deliver all of the shipments of such commodities as may be tendered by the shipper under conditions hereinafter expressed."

Plant claims that by these terms performance was optional with the plaintiff, rendering the contract void for want of mutuality. Plaintiff claims this was a contract under which plaintiff agreed to obtain certain of its transportation needs from the partnership and the latter agreed to supply those needs, thus not wanting in mutuality. Plant's analysis is the more reasonable. We do not consider that an agreement to tender "as many of its shipments as its general business and market conditions will warrant" furnishes an objective text.

▮ But this defect of want of mutuality applies only to executory contracts. It does not apply to an executed contract nor to the executed portion of a contract. (*Vitagraph, Inc.* v. *Liberty Theatres Co.*, 197 Cal. 694, 701 [242 P. 709]; 12 Cal. Jur.2d 320, Contracts, § 115.)

(3) *The issue whether the coffee here involved was delivered "under and pursuant to the terms of said contract" presents a more difficult question.*

The contract between plaintiff and the partnership provided in part that the carrier (the partnership) would at all times maintain "cargo insurance . . . in sufficient amount to protect shipper's [plaintiff's] commodities while in possession or custody of the carrier." Woodard testified that in doing business with International Freightways plaintiff required a cargo insurance policy. If they had not had this cargo policy plaintiff would not do business with them. As traffic manager for plaintiff it was his duty to obtain cargo policies from all carriers. Woodard admitted that in September, 1950, he knew that there was a corporation by the name of "International Freightways" and that plaintiff's cargoes were insured by an insurance policy issued to that corporation. This policy covered the period commencing February 1, 1950, and continuing until cancelled.

This evidence would support a finding that as early as September, 1950, plaintiff was knowingly shipping its coffee

with International Freightways, a corporation. But that would not necessarily overcome an inference that plaintiff was still shipping pursuant to its contract with the partnership of the same name. In the absence of further information concerning a change of conditions (such as dissolution of the partnership and transfer of its business to the corporation) plaintiff would be entitled to assume that the corporation was an instrumentality of the partnership and that the latter was still hauling pursuant to the contract. Such an inference should be entertained in support of the trial court's finding.

The coffee in question was shipped in February, 1951. What is the evidence, if any, of a change in the relationship and dealings between the parties after September, 1950?

Woodard further testified: About November 30, 1950, Williamson told Woodard that Williamson and Plant and others were selling all the stock in International Freightways to United Freightways in San Jose. Woodard understood that Williamson was going to run the business himself as International Freightways, with that trade name, and that the principal office would be in San Jose. Williamson asked Woodard if plaintiff would continue to ship by International Freightways in spite of the fact Williamson, Plant, Horne and the others were selling their stock. Woodard told Williamson he would ship it by Williamson. He did not tell Williamson he would continue to ship the coffee by International Freightways; International Freightways hardly entered into it at that time.

February 12, 1951, Woodard wrote a letter concerning the contract of December 1, 1949. It was addressed to International Freightways, directed to the attention of ''George Williamson.'' It read as follows:

''Dear George:

''We are writing you in regard to the contract that we have on hand dated 1st December 1949 for your transporting coffee to Los Angeles.

''The following amendment should be made to this contract. The title head of the contract is to be amended to read, 'George Williamson under the firm name and style of International Freightways.' Amendment No. 2 is complete cancellation of paragraph No. 6. We would also like to amend paragraph No. 8 so that it reads in the following manner:

'' 'This contract shall remain in force until such time as it may be terminated by either of the parties hereto and it is agreed and understood that same may be cancelled by either

of the parties hereto by giving five days notice in writing to the other.'

"Will you please confirm the above changes by return mail.

"These following changes are being made to protect both you and ourselves in the event that we take over your share of the building. By leaving the contract in force on the other paragraphs we will still be able to give you the hauling of coffee to Los Angeles as needed.

"If you feel that there is any question on both changes, please do not hesitate to notify us."

Paragraph (6), to be deleted, dealt with shipments to and subsequent shipments from the carrier's Los Angeles warehouse. Woodard explained the plaintiff had taken over its own distribution in the Los Angeles area and that he discussed with Williamson in the latter part of December, 1950, or early part of 1951, taking over "Mr. Williamson's lease, or International Freightways', on the building they occupied there [in Los Angeles], for we did want to cancel the paragraph in the contract as pertaining to distribution," and that was what led up to his letter of February 12, 1951, relative to changing the contract.

Asked if he received a reply to this letter, Woodard said, "I do not definitely recall receiving a letter, but probably did receive a letter from Mr. Williamson."

The loss of the coffee was discovered about February 25, 1951. On March 2 of that year Williamson wrote plaintiff a letter acknowledging "the responsibility of International Freightways for any and all shortages which may arise from misdeliveries prior to March 1, 1951." He signed "George Williamson" over the typed designation "George Williamson, International Freightways."

Finally, according to Woodard's own testimony, he had no discussion with Horne or with Plant after November 30, 1950, except a telephone call from Plant long after the events in suit, concerning operations in Los Angeles several years before, information needed by Plant in connection with a tax claim the government was asserting.

This evidence, coupled with the information Woodard received in September, 1950, concerning the corporation and the cargo policy, would support a finding that after his conversation of November 30, 1950, Woodard shipped with Williamson as an individual, not with a partnership nor with Williamson as a member of a partnership.

An oral contract was sufficient for the purpose. Its subject matter was not such as to require a writing under section 1624 of the Civil Code or section 1973 of the Code of Civil Procedure. ■ In such a case a contract comes into being when all the terms are definitely understood, even though the parties contemplate that a formal writing embodying those terms will be executed. (*Clarke* v. *Fiedler*, 44 Cal. App.2d 838, 846-849 [113 P.2d 275].)

■ Woodard's letter of February 12, 1951, concerning the terms of their contract, was consistent with the thought that he already had a contract with Williamson, a confirmation of an agreement already orally made.

A novation may have been effected by abandonment of the old written contract and the making of the new oral contract. (*Pearsall* v. *Henry*, 153 Cal. 314 [95 P.· 154, 159]; *Tucker* v. *Schumacher*, 90 Cal.App.2d 71, 74 [202 P.2d 327]; *Arsenio* v. *Smith*, 50 Cal.App. 173 [194 P. 756]; 20 Cal.Jur. 246, Novation, § 2.) However, we are not necessarily concerned with novation. If Woodard in fact shipped with Williamson, as an individual and not as a partner, there is no sufficient basis for holding Plant liable for the loss of the coffee, regardless of the effect of the new oral contract with Williamson upon the former written contract with the partnership.

In short, the evidence, furnished by the plaintiff itself, is insufficient to support the finding that the coffee in question was delivered under and pursuant to the contract with the partnership of Williamson and Plant. The judgment, therefore, must be reversed as to Plant.

That portion of the judgment which decrees that plaintiff have judgment against George B. Plant, individually and as a partner, and against International Freightways as a partnership, is reversed.

Peters, P. J., and Bray, J., concurred.