[Civ. No. 17623. First Dist., Div. Two. June 11, 1958.]

JACINTO SIQUIG, Respondent, v. WEST COAST PICKLE COMPANY (a Corporation) et al., Appellants.

[And six other cases.]*

*Bart Rojas v. West Coast Pickle Co. et al.; Larry Cristobal v. West Coast Pickle Co. et al.; Guadencio et al. v. West Coast Pickle Co. et al.; A. Undajon et al. v. West Coast Pickle Co. et al.; M. S. Miguel v. West Coast Pickle Co. et al.; and John Catablan v. West Coast Pickle Co. et al.

DeMarco & DeMattei and Victor A. Chargin, Jr., for Appellants.

Peter Anello and Cyril Viadro for Respondents.

DOOLING, J.—In these seven consolidated actions the defendants appeal from judgments for the plaintiffs.

Plaintiffs are farmers in Santa Clara County. Early in 1954, through one Joseph Di Napoli, who was employed as their agent, buyer and field-man in Santa Clara County, the two corporate defendants, appellants herein, entered into separate written contracts with plaintiffs to plant, grow, harvest and sell to said appellants yellow Cascabella peppers at the price of 9½ cents per pound. The contracts were

negotiated by Di Napoli and signed by him in appellants' names as "buyer's agent" on forms furnished to him for that purpose by appellants.

After several deliveries had been made to appellants, some of which were paid for at the contract price of 9½ cents, and some later deliveries by voluntary action of appellants at 10½ cents per pound because the market price had increased, appellants began to pay on further deliveries less than the contract price, the lowest price so paid being 3½ cents per pound. The growers complained to Di Napoli that they could not make a profit at these lower prices since their harvesting cost was 5 cents per pound and they were informed by Di Napoli under authorization of one Root, president of appellant West Coast Pickle Company, that appellants could not use the peppers and to plow them under.

Respondents consulted their attorney and on September 17, 1954, the attorney wrote to appellants stating that respondents had been informed by their agent Di Napoli that appellants were no longer desirous of accepting delivery of the peppers in accordance with their contracts. The attorney's letter concluded with a statement that respondents were ready, willing and able to comply with their contract and if they sustained damages by appellants' failure to comply "they expect to hold you legally responsible for any and all damages."

Appellants replied that if Di Napoli had made such representations he was not authorized to do so and stated further that "we are ready, able and willing to perform all of our obligations under the contract or contracts . . . according to the terms thereof, and that we intend to do so."

Despite this reply of appellants, which was dated September 20, 1954, appellants did not notify Di Napoli of this letter nor countermand their previous instruction to him that they could not use any more of these peppers and Di Napoli continued to act under the belief that appellants did not wish to accept any further deliveries of these peppers and in the latter part of September Di Napoli informed respondents' attorney that appellants were refusing to accept any further deliveries of respondents' peppers. Di Napoli at the request of some of the respondents then attempted to sell their peppers elsewhere without success.

Appellants' first contention is that in view of their letter of September 20 the finding of the trial court that they refused to accept delivery is without support in the evidence.

The trial court, however, was entitled to weigh appellants' subsequent conduct against the expressed intention in their letter of September 20 to continue to perform their contracts. Di Napoli continued to be their general agent, a part of whose duties had been to receive, weigh and ship, the peppers. They not only failed to notify Di Napoli of their letter of September 20, but they also permitted him to continue to believe and to represent to respondents and their attorney that appellants would not accept any further deliveries. Di Napoli was discharged by appellants some time in the autumn of 1954, but respondents were not notified of that fact and, as to them, he continued to be at least an ostensible agent. (Civ. Code, § 2356; 2 Cal.Jur.2d Agency, § 23, p. 670; Restatement Agency, § 129.) On the evidence the trial court could reasonably find that the conduct of their agent Di Napoli constituted a refusal of further deliveries, despite their letter of September 20.

Appellants argue that there was not sufficient evidence to support an award of damages. Respondents lost the sale of the balance of their crop after the early part of September. There was evidence of the acreage planted to these peppers and of the deliveries made to appellants. The evidence showed that these peppers mature progressively and that they would continue to be harvested until the frosts in late November. The cost of harvesting was established as 5 cents per pound. There was evidence that Di Napoli represented to several of respondents before their contracts were signed that the peppers would yield a harvest of 10 tons per acre, and one grower testified that in a previous year on the same land he obtained 6 tons from ¼ acre. A calculation showed that at 4½ cents per pound, anticipated profit over cost of harvesting, the judgments represent an anticipated total yield of slightly over 8½ tons per acre. ■ "One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape the liability because the damages could not be measured with exactness." (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal. 2d 290, 297-298 [149 P.2d 177]; *Stott* v. *Johnston*, 36 Cal.2d 864, 876 [229 P.2d 348, 28 A.L.R.2d 580].)

■■ Appellants produced a witness who testified that he was familiar with several crops of Cascabella peppers grown in other areas of the county in former years and that they had not yielded over 5 tons per acre. No attempt was made to prove that climate, soil or growing conditions were similar to those involved here. The trial judge admitted this evi-

dence for what it was worth but expressed himself that because of his personal knowledge of growing and soil conditions in the several areas he would take judicial notice that the areas testified to by this witness would give a smaller yield. It is doubtful that judicial notice may properly extend to matters of this character, but in view of appellants' failure to prove similarity of conditions the evidence was of slight probative value and we can find no prejudice.

█ The burden of proving failure to mitigate damages is on appellants. (14 Cal.Jur.2d, Damages, § 113, p. 734.) Such evidence as was produced on this subject was produced by respondents. Some of them showed an unavailing effort by Di Napoli to market their peppers elsewhere and appellants made no showing that respondents could have found other buyers.

█ The findings were of the ultimate facts alleged in the complaint. The damages were found in a lump sum for each plaintiff. This was sufficient. (*Klegman* v. *Moyer*, 91 Cal.App. 333, 345-347 [266 P. 1009].) █ Generally it is sufficient if the court finds on the ultimate facts alleged in the pleadings, and it is not necessary to find the probative facts upon which the ultimate facts depend. (24 Cal.Jur., Trial, § 203, pp. 968-969.) We have examined the findings in the light of these rules and find them sufficient.

Judgments affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 6, 1958.