[No. A010176. First Dist., Div. Two. Aug. 20, 1986.]

CARNATION COMPANY, Plaintiff, Cross-defendant and Respondent,
v.
OLIVET EGG RANCH et al., Defendants, Cross-complainants and
Appellants.

COUNSEL

Eric L. Henrikson and Henrikson & Gee for Defendants, Cross-complainants and Appellants.

Paul H. Dawes, Charles P. McCarthy, James Goldberg and Thelen, Marrin, Johnson & Bridges for Plaintiff, Cross-defendant and Respondent.

OPINION

KLINE, J.—Olivet Egg Ranch (Olivet), a limited partnership, and Harold J. Kristal (Kristal), and various coventurers with Kristal (hereinafter collec-

tively referred to as appellants), appeal following jury trial on claims of fraud and breach of various warranties arising out of Olivet's purchase and use of chickenfeed produced by the Albers Milling Division of the Carnation Company (Albers).

We must, at the outset, address the question of mootness. Several weeks after oral argument before this court, when this appeal had been submitted for decision, counsel for all parties joined in a self-styled "motion for order vacating submission; or alternatively, to defer further consideration of submitted appeal." The motion was made upon the ground that the parties had entered into a tentative settlement agreement. Thereafter, the parties notified the court that all necessary approvals had been obtained and the settlement agreement had been executed.

In light of this disposition of the dispute between the parties, we have determined to treat the parties' motion as one for dismissal of the appeal and hereby grant the motion as to six of the eight issues raised by appellants.

The two remaining issues are: (1) whether the injured party or the breaching party bears the burden of proving the adequacy or inadequacy of efforts to mitigate consequential damages under California Uniform Commercial Code section 2715, subdivision (2)(a) and (2) whether cross-demands for money must be mutual and due from the same person to the same person in order to qualify as offsetting claims under Code of Civil Procedure section 431.70. The former issue presents a question of first impression in California, about which courts in other jurisdictions are almost evenly divided. The latter is one on which there is a surprising dearth of helpful authority.

It is established that "[i]f an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot. (*In re William M.* (1970) 3 Cal.3d 16, 23-24 ...; *Di Giorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 ... ; *American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d 167, 181-182 .... )" (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715, 716 [106 Cal.Rptr. 21, 505 P.2d 213]; *Green* v. *Superior Court* (1974) 10 Cal.3d 616, 622, fn. 6 [111 Cal.Rptr. 704, 517 P.2d 1168.)  Due to the likelihood the legal questions earlier described will arise again, and the manner in which prompt resolution of these questions will facilitate commercial transactions in this state, we find

that these issues involve matters of continuing public interest and on this basis proceed to decide them.[1]

## FACTS

The facts pertinent to the issues we decide are as follows. Appellant Kristal, through the Olivet Egg Ranch Limited Partnership and a network of other partnerships and joint ventures, controlled and managed an egg-producing operation in Northern California.

For approximately five years, Olivet or its predecessors in interest purchased chickenfeed from Albers, which operated a mill in Santa Rosa. After unsuccessfully seeking payment of its bills, Carnation advised appellants they would no longer be allowed to purchase on credit. Appellants executed a note for the $606,382 balance owed to Carnation. When appellants defaulted on the note Carnation commenced this litigation. Appellants cross-complained on various theories,[2] all premised on their assertion that the feed sold them was "misformulated, mis-produced and nutritionally substandard" and, therefore, breached a variety of express and implied warranties made to appellants by Carnation and its employees. Appellants alleged that the feed's nutritional deficiencies had caused a decrease in Olivet's egg production revenues and sought to offset such losses against the amount due Carnation on the note.

After lengthy pretrial discovery, jury trial commenced in October 1979. Because the execution and terms of the note were uncontested, appellants proceeded as if plaintiffs and presented their case first. At the conclusion of Olivet's case Carnation successfully moved for nonsuit as to the loss-of-goodwill portion of Olivet's damage claim. The court granted a nonsuit on goodwill damages as to the breach of warranty causes of action only on the theory appellants had not met their burden of proving, under California Uniform Commercial Code section 2715, that they had made reasonable efforts to mitigate the damages flowing from the loss of their retail egg-marketing accounts.

At the close of evidence Carnation was granted a directed verdict as to a portion of the damages suffered by Olivet's predecessor in interest in 1970.

---

[1] Counsel for the parties have advised the court that "a published opinion [addressing any or all issues raised in this appeal] would not prejudice any party's rights or affect any party's obligations pursuant to the settlement agreement."

[2] Specifically, appellants sought recovery for breach of express warranties and warranties of merchantability and suitability, for negligent production and quality control of the feed, and for fraudulent misrepresentations as to the quality of the feed and its suitability for egg production.

The jury found that Carnation had breached its warranties and damaged Olivet in the amount of $225,000, but that the claim of fraudulent misrepresentation had not been established.

Separate judgments for both parties were entered and Olivet moved for a new trial on various grounds. Carnation petitioned for an award of attorney's fees and a determination of the interest due on its note. The court denied the motion for new trial, granted a motion to vacate the two previously entered judgments and ordered nunc pro tunc entry of the net judgment after verdict. This appeal followed.

I.

*Burden of Proof Under California Uniform Commercial Code Section 2715, Subdivision (2)(a)*

■ The nonsuit as to the $309,000 loss in goodwill appellants claimed due to their inability to service their egg marketing accounts[3] was granted upon the theory that California Uniform Commercial Code section 2715, subdivision (2)(a) places on the aggrieved party the burden of showing it took reasonable steps to mitigate its consequential damages.[4] In granting nonsuit the court necessarily determined that, as a matter of law, Olivet failed to present evidence sufficient to meet its burden. It will be necessary to consider whether Olivet presented evidence sufficient to withstand nonsuit on this issue only if we first determine that the court's imposition of the burden on Olivet was legally correct. Olivet could not be penalized for failing to meet a burden which actually rested with Carnation. Thus, we are squarely faced with a question of first impression in California: which party bears the burden of proving the adequacy or inadequacy of efforts to mitigate conse-

---

[3]Olivet had an arrangement with several large supermarket chains pursuant to which the markets invested in the ranch partnership and purchased all of their requirements directly from the ranch at a retail price. Olivet was thereby provided with an assured outlet for its eggs and was to derive a profit for the processing and marketing, as well as the egg sale. Due to Olivet's shortfall in egg production, it ultimately was unable to keep up with the requirements of its market accounts and Olivet transferred the accounts to Olson Egg Farms. Appellants claimed the loss of the goodwill value of the retail marketing arm of its operation as an additional element of damages.

The nonsuit was granted only as to the loss of goodwill attributable to the claimed breach of warranty. Because the burden of proof on mitigation as to the fraud cause of action is on the party asserting the defense, the court ruled that the issue remained in the case as to that claim.

[4]Section 2715 provides, in relevant part, that "(2) Consequential damages resulting from the seller's breach include [¶] (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know *and which could not reasonably be prevented by cover or otherwise . . . .*" (Italics added.) This represents California's codification of Uniform Commercial Code section 2-715, subdivision (2)(a).

quential damages under California Uniform Commercial Code section 2715, subdivision (2)(a)?

Section 2715, subdivision (2)(a), which was adopted without change from the Uniform Commercial Code (UCC), simply declares that "[c]onsequential damages resulting from the seller's breach include ... [a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."[5]

The official comment to the parallel provision of the UCC does not shed much light on allocation of the burden of proof. Paragraph 2 of the pertinent UCC comment provides in material part that: "The 'tacit agreement' test for the recovery of consequential damages is rejected. Although the older rule at common law which made the seller liable for all consequential damages of which he had 'reason to know' in advance is followed, *the liberality of that rule is modified by refusing to permit recovery unless the buyer could not reasonably have prevented the loss by cover or otherwise.* Subparagraph (2) [of the statute] carries forward the provision of the prior uniform statutory provision as to consequential damages resulting from breach of warranty, but modifies the rule by requiring first that the buyer attempt to minimize his damages in good faith, either by cover or otherwise." (Italics added.) This comment does not demonstrate, as respondent asserts, that section 2715, subdivision (2)(a) was intended to act as "a restraint on the liberality of the common law."

Paragraph 4 of the UCC comment makes specific reference[6] to the UCC's section on the liberal administration of remedies,[7] indicating that the right to consequential damages should be *broadly,* not narrowly, construed. Furthermore, while paragraph 4 states that "[t]he burden of proving the extent of loss incurred by way of consequential damage is on the buyer ..." this statement does not determine the allocation of the burden of proof on

---

[5]California Uniform Commercial Code section 2712, subdivision (1) defines "cover" as follows: "After a [seller's] breach ... the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller."

[6]This paragraph states that "the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of [consequential damages]."

[7]UCC section 1-106(1) provides: "The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this Act or by other rule of law." See also, Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two* (1963) 73 Yale L.J. 199, 277 ("The Code is dedicated to the expansion of damages, of all kinds ....")

the mitigation issue. It is entirely possible for the injured party to bear the burden of proving the *extent* of consequential damages while the breaching party has the duty of proving those items which *limit* the award of consequential damages.

The UCC's failure to allocate unambiguously the burden of proving mitigation has resulted in conflicting interpretations among those jurisdictions that have considered the question.[8] Unfortunately, these cases are of little value to us since they do not analyze the problem nor explain why the burden should rest with one party or the other. By and large the cases merely state the unembellished conclusion that one or the other party has the burden of proof on this issue.

Paragraph 3 of the California code comment to section 2715 provides that "[t]he consequential damages provided for in subdivision (2) were recoverable under prior California law." (Citing, as examples, *Tomlinson* v. *Wander Seed & Bulb Co.* (1960) 177 Cal.App.2d 462 [2 Cal.Rptr. 310], and *Roberts Distrib. Co..* v. *Kaye-Halbert Corp.* (1954) 126 Cal.App.2d 664 [272 P.2d 886].) Similarly, another California Court of Appeal has concluded that section 2715, subdivision (2)(a) "is merely a codification of the rule that the buyer must attempt to minimize damages. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 639-640, 670-674).)" (*Sun Maid Raisin Growers* v. *Victor Packing Co.* (1983) 146 Cal.App.3d 787, 792 [194 Cal.Rptr. 612].) Thus, adoption of the UCC did nothing to alter preexisting California law on the right to recover consequential damages and the duty to mitigate such losses. We have discovered no pre-UCC California goods cases (which now would be governed by the UCC) which deal with the issue before us. However, there is abundant California authority on the question as it arises in other contract cases. In those cases, the established rule is that "[t]he burden of proof is on the party whose breach caused damage, to establish

---

[8]Appellants cite the following cases which have placed the burden on the seller: *Kohlenberger, Inc.* v. *Tyson's Foods, Inc.* (1974) 256 Ark. 584 [510 S.W.2d 555]; *Lake Village Implement Co.* v. *Cox* (1972) 252 Ark. 224 [478 S.W.2d 36]; *Bemidji Sales Barn* v. *Chatfield* (1977) 312 Minn. 11 [250 N.W.2d 185; *Nat. Farmers Organ.* v. *McCook Feed & Sup. Co.* (1976) 196 Neb. 424 [243 N.W.2d 335]; *Hardwick* v. *Dravo Equipment Co.* (1977) 279 Ore. 619 [569 P.2d 588]; *Carl Beasley Ford, Inc.* v. *Burroughs Corporation* (E.D.Pa. 1973) 361 F.Supp. 325, 334, affd. without opn. 3d Cir. 1974) 493 F.2d 1400; *State* v. *Duncan* (1977) 312 Minn. 17 [250 N.W.2d 189]; *Clark* v. *International Harvester Co.* (1978) 99 Idaho 326 [581 P.2d 784, 805]; *LTV Aerospace Corporation* v. *Bateman* (Tex.Civ.App. 1973) 492 S.W.2d 703, 709. Similarly, respondent provides a list of cases from other jurisdictions which have placed the burden of mitigation on the buyer: *Cargill, Inc.* v. *Fickbohm* (Iowa 1977) 252 N.W.2d 739, 742; *Hayes* v. *Hettinga* (Iowa 1975) 228 N.W.2d 181; *Jimlar Corp.* v. *A. J. Armstrong, Inc.* (N.Y.Sup.Ct. 1975) 17 UCCRS 108; *Everett Plywood Corporation* v. *United States* (Ct.Cl. 1975) 512 F.2d 1082; *Stair* v. *Gaylord* (1983) 232 Kan. 765 [659 P.2d 178]; *M. K. Metals, Inc.* v. *Container Recovery Corp.* (8th Cir. 1981) 645 F.2d 583, 590; *Intern. Petro. Serv., Inc.* v. *S & N Well Serv.* (1982) 230 Kan. 452 [639 P.2d 29, 38].

matters relied on to mitigate damage. [Citations omitted.]" (*Steelduct Co. v. Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 654 [160 P.2d 804] [contract action]; accord, *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 628 [39 Cal.Rptr. 739, 394 P.2d 579] [wrongful discharge]; *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 456 [129 Cal.Rptr. 216] [stating that it is "axiomatic" that the burden of proof regarding mitigation is on the breaching party].)[9] Thus, to the extent adoption of the UCC was intended to leave undisturbed preexisting law on this question, we should continue to place the burden on the breaching party. Moreover, the interest in consistency supports adoption of a rule placing on the breaching party the burden of proof under California Uniform Commercial Code section 2715, subdivision (2)(a).

While the commentators do not unanimously support allocating the burden to the breaching party, there is substantial support among them for this position. Corbin, for example, declares that "[t]he burden of proving that losses have been avoided by reasonable effort and expense must always be borne by the party who has broken the contract." (5 Corbin on Contracts (1964) § 1039, citing *Vitagraph, Inc.* v. *Liberty Theatres Co., supra,* 197 Cal. 694, and *Rosenberger* v. *Pacific Coast Ry. Co.* (1896) 111 Cal. 313 [43 P. 963].) White and Summers state that "consequential damages that the *defendant* proves the buyer could have avoided will not be allowed ... " (J. White and R. Summers, Uniform Commercial Code (2d ed. 1980) §§ 6-7, p. 250, italics added.)[10]

Placing on the party who breaches the burden of showing that consequential losses could have been avoided is intuitively attractive, since proof that there has been a failure to mitigate adequately will reduce the damages

---

[9]Other California cases that have placed on the breaching party or tortfeasor the burden of proof regarding mitigation include: *Vitagraph, Inc.* v. *Liberty Theatres Co.* (1925) 197 Cal. 694, 699 [242 P. 709]; *Baruh* v. *Kuhl* (1963) 213 Cal.App.2d 266, 273 [28 Cal.Rptr. 573] (intentional tort); *Hunter* v. *Crorsdill* (1959) 169 Cal.App.2d 307, 318 [337 P.2d 174] (action for recovery of money); *Siquig* v. *West Coast Pickle Co.* (1958) 161 Cal.App.2d 254, 258 [326 P.2d 596 (contract action); *Gray* v. *American Surety Co.* (1954) 129 Cal.App.2d 471, 476 [277 P.2d 436] (wrongful attachment).

[10]Further support for this conclusion may be found in the following articles: Carroll, *A Little Essay in Partial Defense of the Contract-Market Differential as a Remedy for Buyers* (1984) 57 So.Cal.L.Rev. 667, 674-675 ("The breaching party carries the burden of proving that the injured party could have mitigated ... damages ...."); Schiro, *Prospecting for Lost Profits in the Uniform Commercial Code: The Buyer's Dilemmas* (1979) 52 So.Cal.L.Rev. 1727, 1751 ("Mitigation ... [is introduced] ... by the *defendant's* argument that whatever damage may be recoverable ... must now be reduced to the extent plaintiff failed to mitigate.") (italics added); and Dunn, *Recovery of Damages for Lost Profits in California* (1975) 9 U.S.F. L.Rev. 415, 439 ("Failure to mitigate damages is a matter of defense," fn. omitted.) But see, Hawkland, Uniform Commercial Code Series, section 715:05, pages 398-399 (where the author states that the *plaintiff/buyer* must "show that the loss upon which his claim to consequential damages rests could not have been avoided by cover or otherwise.")

awarded and, therefore, seems more in the nature of a defense than an element of the plaintiff's affirmative case. In this sense, proof of failure to mitigate is analogous to evidence showing comparative negligence in tort law, which must be alleged and proved by the defendant. (See generally, *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) Moreover, it is sensible to require the defendant to prove those items which go to reduce the plaintiff's recovery, as plaintiffs would have little incentive to do so.[11]

Respondent maintains that "[i]t makes more sense to place the burden of proving efforts to mitigate on the party best able to adduce evidence of such efforts." While this argument is on its surface appealing it does not stand up to closer scrutiny. As has been noted "[v]ery often one must plead and prove matters as to which his adversary has superior access to the proof. Nearly all required allegations of the plaintiff in actions for tort or breach of contract relating to the defendant's acts or omissions describe matters peculiarly in the defendant's knowledge. Correspondingly, when the defendant is required to plead contributory negligence, he pleads facts specially known to the plaintiff." (McCormick on Evidence (3d ed. 1984) ch. 36, § 337 at p. 950.)

Moreover, in cases such as this defendants do not genuinely lack the ability to ascertain the pertinent facts. A carefully drafted set of interrogatories could have provided Carnation with all the information it required about Olivet's efforts to mitigate its consequential damages. Since it therefore had access to the relevant evidence we see no reason why this consideration should prevent allocation to Carnation of the burden of showing that appellants failed to adequately mitigate their consequential damages.

For the foregoing reasons, we hold that while the burden of proving the extent of loss incurred by way of consequential damages rests with the injured party, section 2715, subdivision (2)(a) imposes upon the allegedly breaching party the burden of proving the inadequacy of efforts to mitigate consequential damages. Thus, Carnation, not Olivet, properly had the burden of proof on the issue of Olivet's mitigation of the consequential damages arising from Carnation's breach.[12] Olivet therefore had no duty to

---

[11]See, generally, Harris and Graham, *A Radical Restatement of the Law of Seller's Damages: California Results Compared* (1966) 18 Stan.L.Rev. 553, 560.

[12]In granting the nonsuit the court necessarily concluded that Olivet's failure to adequately mitigate its consequential damages precluded recovery of *any* consequential damages, even those which reasonably could *not* have been avoided. This was an incorrect interpretation of the law. A party's failure to take reasonable steps to mitigate damages bars recovery of only the avoidable portion of the damages. "A failure to attempt to mitigate damages will not bar plaintiff entirely from a recovery, but will only prevent the recovery of such damages as might

present evidence of mitigation and the granting of the nonsuit on the basis of Olivet's asserted failure to produce such evidence was error. The nonsuit removed from the jury's consideration a $309,000 damage claim. Since Carnation never presented evidence on this issue there is no way of knowing whether appellants likely would have prevailed if the court had placed the burden of proof on Carnation. Accordingly, the judgment must be reversed.

## II.

*Appellants' Ability to Assert Joint Venture I's Losses as Offsets*

At the conclusion of the evidence Carnation sought and was granted a directed verdict as to the damages allegedly suffered by one of Kristal's previous partnerships, Joint Venture I, in 1970.[13] The directed verdict was based on Carnation's argument that appellants could not invoke California Code of Civil Procedure section 431.70 to protect the 1970 claims and that they were therefore time-barred.[14]

As relevant, section 431.70 provides that: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations." The trial court concluded that since "cross-demands" must have co-existed "between persons," the rights must be mutual and due from the same person to the same person to qualify as offsetting claims under the statute. Because Joint Venture I was not a party against whom Carnation

___

have been avoided by reasonable efforts on his part." (25 C.J.S., Damages, § 33 at p. 703, fns. omitted.) Specifically, White and Summers state that under UCC section 2-715(2)(a) "the plaintiff cannot recover for losses he reasonably could have prevented." (White and Summers, *supra, Uniform Commercial Code*, § 10-4, p. 396.) The negative implication of this statement is that the plaintiff *can* recover those losses that could not have been prevented by any reasonable measures. (*Valencia* v. *Shell Oil Co.* (1944) 23 Cal.2d 840, 844 [147 P.2d 558].) Thus, appellants would have been entitled to recover the amount by which the proven goodwill value of the accounts exceeded the amount it could have received in mitigation.

[13]Joint Venture I operated on Olivet Ranch for a short time in 1970. After the joint venture was dissolved, the ranch was vacant for a time until another venture, Joint Venture II, was formed in 1971. In 1974 Joint Venture II was merged into the partnership that was a party to this suit. Appellants had claimed that Joint Venture I suffered $30,000 in damages due to its use of Carnation's allegedly nutritionally deficient feed.

[14]Since Joint Venture I's claim against Carnation would have accrued in late 1970, and was not asserted until the filing of the cross-complaint on April 8, 1976, it would be barred by the statute of limitations if it did not fall within the purview of section 431.70.

had a claim the court reasoned that Joint Venture I's losses could not be asserted as an offset in this action.[15] We agree with the trial court's analysis and therefore find no error in awarding Carnation a directed verdict on this claim.

Appellants suggest that the question comes down to "whether a partner with some beneficial interest in a partnership claim should be entitled to offset under § 431.70 some or all of the partnership's claim against a third party, against that third party's claim against the partner." Appellants rely upon the bare language of the Uniform Partnership Act (codified in Cal. Corp. Code § 15000 et seq.) as support for their position. They reason that since a partner has a proportionate beneficial interest in the partnership's assets and liabilities (§§ 15018, 15024-15026), and an equal right to manage and conduct the partnership's business (§§ 15018, subd. (c) and 15024, subd. (3)), it follows that, even after dissolution, a single partner may assert a partnership claim as an offset in an action not involving the partnership. We see the matter differently.

Section 431.70 requires that claims must be mutual if they are to qualify as "cross-demands" under the statute. In considering a claim under former Code of Civil Procedure section 440,[16] predecessor to section 431.70, our Supreme Court stated: "[t]here can be no question but that the general rule as to the necessity of mutuality is as asserted by respondent, and it may be conceded that in a strict sense there is no mutuality between the claims here under consideration; *they are not due to and from the same parties and in the same capacity.*" (*People* v. *California etc. Trust Co.* (1914) 168 Cal. 241, at p. 248 [141 P. 1181], italics added; see also, *Lyon* v. *Petty* (1884) 65 Cal. 322, 324 [4 P. 103] [concluding that under former § 440 the claims must be in the nature of a counterclaim and "existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action . . . "].) "Thus, a partnership obligation or claim may not be set off against the personal obligation or claim of the partners . . . ." (16 Cal.Jur.3d (rev. 1983) Counterclaim and Setoff, § 9, at p. 259.)[17]

---

[15]Appellants admit that "there was no evidence that the first joint venture continued in existence after 1970, or of how *Olivet* might have succeeded to its rights and interests," although there was evidence that Kristal was one of the partners.

[16]Former section 440 of the Code of Civil Procedure section provided, in relevant part, that: "Where cross-demands have existed between persons, under such circumstances that if one had brought an action against the other, a counter-claim could have been set up, the two demands, so far as they equal each other, shall be compensated . . . ."

[17]Conversely, it has been held that "[i]n an action on a partnership demand the defendant cannot set off an individual debt from one of the partners. [Citations omitted.] A claim against one partner is not a good counter claim in an action upon a claim due the firm." (*Yankelewitch* v. *Beach* (1931) 115 Cal.App. 629, 634 [2 P.2d 498].)

The trial judge and counsel for both parties engaged in a lengthy discussion of this issue, during which appellants' counsel indicated that Joint Venture I was distinct from Joint Venture II because they were composed of different partners and pursued significantly different objectives.[18] Thus, Carnation argues that "Kristal as partner of Joint Venture I cannot set off Joint Venture I's claim against Carnation's claim upon Kristal, either individually or as a partner in Joint Venture II and Olivet, because Joint Venture I has no obligation to satisfy Kristal, Joint Venture II or Olivet's obligations." We agree.

The language of section 431.70 and the cases discussing its interpretation and application make clear that the statute was intended to protect mutual claims existing between the same persons in the same capacities. We believe it would require stretching section 431.70 far beyond its intended boundaries to allow appellants to assert Joint Venture I's claim against Carnation when Carnation is not maintaining any claim against Joint Venture I. Furthermore, it is highly unlikely that the policy objectives underlying section 431.70 would be served by its application in this case. ██ ██ As appellants acknowledge, the underlying purpose of the statute is to prevent a party from sitting on a claim against a particular person and thereby inducing that person to permit his or her counterclaim to become time barred, and then swooping in on the defenseless victim. However, we cannot see how this purpose would be served by applying the statute here. In light of the complicated relationships between and among the persons and entities involved and the uncertainty of section 431.70's application, it is difficult to believe Carnation deliberately would have waited until 1976 to sue *Olivet and Kristal* with the intention of "lulling" *Joint Venture I* into permitting its claim to become barred by the statute of limitations. The trial court was correct in granting Carnation a directed verdict on this claim.[19]

---

[18]Joint Venture I was a limited partnership composed of eight partners; Joint Venture II excluded two of those partners (who had held a combined 25 percent interest in Joint Venture I) and added three new partners. In addition, Joint Venture I merely rented a ranch, ran birds through one egg-laying cycle, and then sold them. Joint Venture II owned the ranch, purchased the birds and then continued to have them produce eggs as long as was profitable.

[19]Even if we had determined that the claims were offsetting cross-demands under section 431.70, Kristal, one of eight partners in Joint Venture I, could not maintain a claim on behalf of the partnership without joining all of his partners. In *Lewis* v. *Hayes* (1918) 177 Cal. 587 [171 P. 293], the California Supreme Court held that a partner could not sue in her individual capacity for damages suffered by a partnerhsip with which she was involved, and stated, " 'the true rule is that the damages to the copartnership must be recovered by the partners jointly, and that damages to the partners individually must be recovered by the partners separately; otherwise it would be necessary to have a partnership accounting in [the instant suit] . . . .' " (*Id.,* at p. 590, quoting *Collier* v. *Postum Cereal Co., Ltd.* (1912) 150 App.Div. 169 [134 N.Y.Supp. 847]; see also, *Leh* v. *General Petroleum Corporation* (S.D.Cal. 1958) 165 F.Supp. 933, 936 [interpreting California law to require the joinder of all partners in an action asserting a partnership claim and denying the individual partners "legal capacity to sue" on behalf of the partnership].)

Moreover, there would be additional problems involved in determining what share of a partnership claim could be used as an offset by one individual. Permitting one partner to offset

## Disposition

Due to the trial court's improper allocation of the burden of proof under California Uniform Commercial Code section 2715, subdivision (2)(a), the judgment is reversed. Each party to bear its own costs on appeal.

Rouse, J., and Smith, J., concurred.

---

the entire partnership's interest might later result in other partners seeking to use the claim as an offset, only to discover that their rights have already have been adjudicated. (That could not happen in this case, because any claims Carnation might have had against Joint Venture I now are time-barred and the venture's claims could only avoid the statute of limitations if asserted as an offset against Carnation. However, it is not difficult to imagine a situation where it might occur.) On the other hand, if an individual only were allowed to apply his percentage share of the partnership claim the litigation would be further complicated by the need to have a partnership accounting to determine the proportionate interest that rightfully could be asserted.