[Civ. No. 6154. Fourth Dist. June 18, 1959.]

BRUCE F. ALLEN, Petitioner, v. SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents; NATE ROSENBERG, Real Party in Interest.

Stanley Mosk, Attorney General, Edward M. Belasco, Deputy Attorney General, Ralph N. Kleps, Legislative Counsel, Edsel W. Haws, Deputy Legislative Counsel, Gray, Cary, Ames & Frye and Eugene L. Freeland for Petitioner.

No appearance for Respondents.

Thomas Whelan, A. L. Wirin, Fred Okrand, Louis S. Katz and Marvin Leon for Real Party in Interest.

MUSSELL, J.—On February 16, 1959, an amended complaint was filed in the Superior Court of San Diego County in which Nate Rosenberg was plaintiff and Bruce F. Allen, petitioner herein, was defendant. In this complaint it was alleged, in substance, that plaintiff appeared in San Diego on October 15, 1958, in response to a subpoena to appear before what was purported to be a Subcommittee on Rackets of the Interim Committee on Judiciary then purporting to be in session at that time and place by virtue of Resolution Number 224 of the California State Assembly; that at said time and place, defendants, Bruce F. Allen and Joseph B. Tracy, did wilfully, intentionally, wrongfully and unlawfully assault plaintiff and commit a battery upon his person and did twist and pinch his arm and disarrange his clothing, and did then and there, by means of force and violence, take from plaintiff a certain document, to plaintiff's damage in the sum of $25,000.

Defendant Joseph B. Tracy was not served with process in said action and has not appeared therein. Defendant Bruce F. Allen filed a general and special demurrer in which, *inter alia*, he raised the question of legislative immunity from civil liability for acts arising out of the performance of legislative functions. The said House Resolution Number 224, the Final Calendar of Legislative Business, Assembly Final History 1958, Regular Budget Session Page 30, and a copy of defendant's letter dated August 7, 1957, establishing the Assembly Interim Committee on Judiciary, Subcommittee on Rackets, were incorporated in the demurrer by reference and made a part thereof. The demurrer was overruled by the trial court on March 27, 1959, and the defendants were granted twenty days from notice within which to answer. On

April 8, 1959, Bruce F. Allen filed in this court his petition for a writ of prohibition to require the trial court to desist from further proceeding in said action until further order of this court. An order to show cause was issued herein on April 24, 1959, returnable on May 13, 1959, at which time the matter was argued and it was conceded by Mr. Whelan, counsel for the real party in interest, that the transcript of the testimony and proceedings before the subcommittee at the time involved was considered by the trial court and received in evidence. This transcript and the record before us shows that on October 15, 1958, petitioner Bruce F. Allen was a member of the State Assembly and was Chairman of the Assembly Interim Committee on Judiciary and also Chairman of its Subcommittee on Rackets. Pursuant to House Resolution Number 224 this subcommittee was conducting an investigation in San Diego on subject matter referred to in paragraph 1. (g) of said resolution, which provides as follows:

"1. The Assembly Standing Committee on Judiciary of the 1957 Regular Session is hereby constituted an interim committee and is authorized and directed to ascertain, study and analyze all facts relating to the system of laws and judicial administration of this State, including but not limited to the following subjects:

"(g) All provisions of law relating to civil and administrative actions and proceedings and remedies and all laws relating to crimes and the manner of punishment therefor, including capital punishment, and criminal procedure, including all matters relating to county jails, and including the principles of contributory and comparative negligence and the rules of evidence, and all provisions of law relating to the tort liability of the State and its agencies and subdivisions, and uniform acts."

Nate Rosenberg, real party in interest herein, in response to a subpoena, appeared before the said subcommittee and, in response to questions asked by the committee, read from a paper, whereupon the following questions were asked and answers by Rosenberg given:

"Q. Have you consulted Mr. Whelan with regard to your subpoena to appear before this Committee?

"A. As a matter of fact, I consulted with him last week when I received the subpoena and that criminal case was in recess for a day because of the illness of one of the defendants, and I hoped that he might be able to be present this morning.

"However, I have consulted with him and retained him under any circumstances, and because of his inability to be here today I refuse to answer the questions.

"Q. Did Mr. Whelan agree to represent you at this hearing? A. Yes, sir.

"Q. Well, Mr. Whelan certainly hasn't made any effort to contact this Committee with regard to his representation of you.

"ASSEMBLYMAN BRADLEY: I was going to raise that point, Mr. Chairman, and also ask that the Chair examine the document which the witness is referring to.

"THE WITNESS: I don't think you have any authority to examine anything. If the court so orders me to give this paper to anyone, I will. But as you are—— I don't believe you have the authority to subpoena any of my personal papers on me, and if the court so orders me to deliver this paper, I will.

"Q. BY CHAIRMAN ALLEN: Mr. Rosenberg, you have been sitting here reading from a piece of paper. A. That is correct.

"Q. Hand it over. A. I refuse to give it to you. You have no authority, I don't believe, to personally search me for any papers.

"Q. You have been sitting here reading in front of this Committee from a piece of paper. A. That is correct. If you wish to see——

"Q. Where did you get that piece of paper? A. I refuse to answer that question, as I told you, and I will repeat it again, under Section 94.12 of the Penal Code, until the attorney is here.

"CHAIRMAN ALLEN: Mr. Tracy, will you get us that piece of paper?

"THE WITNESS: I don't care what you are. I don't think you have the authority to search me.

"MR. TRACY: I am so instructed by the Chairman. Let's not have any——

"THE WITNESS: Take your hand off it, and I will give it to him.

"MR. TRACY: Okay. Thank you."

On the basis of the foregoing questions and statements by Allen as chairman of the committee, Rosenberg filed suit against Allen and Tracy for damages for unlawful assault, battery and for allegedly taking the paper involved from him by force and violence. As noted, the trial court overruled

Allen's demurrer to the amended complaint, whereupon Allen filed herein his petition for a writ of prohibition.

The basic question here is whether the trial court erred in overruling the demurrer to the amended complaint in the superior court action.

While the amended complaint alleged an assault and battery and the use of force on plaintiff, the record of what actually took place at the hearing does not, in our opinion, substantiate the charge or constitute an assault and battery or the use of force and violence by petitioner Allen. As chairman of the committee he first asked Rosenberg to hand the paper over and when Rosenberg refused, Allen told Tracy, the Sergeant at Arms, to obtain it. It is conceded by counsel for Rosenberg that there was no physical contact by Allen with Rosenberg and that at the time involved, Allen was sitting behind a desk some distance from Rosenberg. There is nothing in the record to indicate that Allen directed Tracy to commit an assault or battery on Rosenberg or to obtain the paper involved by unlawful means or the use of force.

■ Where, as here, the demurrer to the amended complaint raised the question of legislative immunity, prohibition is an appropriate remedy to prevent the subjection of the petitioner to the harassment and expense of defending himself in a trial in a civil proceeding. (*People* v. *Superior Court*, 29 Cal.2d 754, 756 [178 P.2d 1, 40 A.L.R.2d 919] ; 45 Cal.Jur.2d, § 159, p. 513.)

As is said in *Tenney* v. *Brandhove*, 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] : ''Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.''

In *Perry* v. *Meikle*, 102 Cal.App.2d 602, 605 [228 P.2d 17], it was held that when judicial officers act within their jurisdiction, they are not amenable to any civil action for damages ; that no matter what their motives may be, they cannot be inquired into ; and that judges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously and corruptly.

In *Hardy* v. *Vial*, 48 Cal.2d 577, 582 [311 P.2d 494], it was held that the rule of absolute immunity, notwithstanding malice or other sinister motive, is not restricted to public officers who institute or take part in criminal actions; that it has been extended by the federal decisions to all executive public officers when performing within the scope of their power acts which require the exercise of discretion or judgment.

In *Cross* v. *Tustin*, 165 Cal.App.2d 146, 150 [331 P.2d 785], it is said that this immunity protects public officers and employees acting within the scope of their duties, even against charges of malicious personal torts, such as libel, slander, and false prosecution. (Citations.)

In *White* v. *Towers*, 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636], it was held that a public officer is liable for injuries caused by acts done outside the scope of his authority and that the duties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes.

In *Hancock* v. *Burns*, 158 Cal.App.2d 785 [323 P.2d 456], it is stated as follows (syllabus la, lb) :

" 'The Senate Fact Finding Committee on Un-American Activities,' and its individual members, were protected by legislative immunity from suit as a result of their action in recommending that an employer discharge certain employees who refused on constitutional grounds to answer questions before the committee where such action was within the authority conferred on the committee by Senate resolution creating the committee as authorized by Const., art. IV, § 37, and it was proper to sustain without leave to amend a demurrer to the employees' complaint against the committee and its members for damages resulting from loss of their jobs, since the court, in ruling on the demurrer, could take judicial notice of the resolution, which was referred to in the complaint, and could thus determine the immunity of the committee and its members from the face of the complaint and that it was useless to allow amendment.'' ▮ The court there held, at pages 789, 790, that

"Although it is often stated that in considering a demurrer a court is bound to accept the truth of the allegations thereof, this statement may, in certain instances, be modified where, by

the nature of the pleading, the court is apprised of the existence of a fact or facts of which it is bound to take judicial notice under the laws of this state. In 39 California Jurisprudence 2d, section 22, under the title 'Facts Judicially Noticed' it is said: '. . . In determining the sufficiency of a pleading, it may be read as though it included all such facts, though not pleaded, and even when the pleading contains an express allegation to the contrary. But the general rule of pleading that a demurrer admits the facts pleaded has no application to facts of which the court may take judicial notice. Allegations contrary to facts which the court may judicially notice are not admitted by demurrer, but must be disregarded and treated as a nullity.' The complaint here containing, as it does, a reference to Senate Resolution Number 127 would appear well within this rule. The trial court was bound to consider the contents of this Senate resolution.''

While it is further stated therein that the Senate resolution there involved could not authorize the commission of a tortious act and that if the committee or its members were charged with the commission of some bodily injury inflicted on another in the course of conducting their hearings, such act could not reasonably be urged to come within the immunity. In the instant case the record does not support a charge of bodily injury on the part of chairman Allen. Courts will take judicial notice of the official acts of the Legislature (Code Civ. Proc., § 1875, subd. 3; *Samish* v. *Superior Court,* 28 Cal.App. 2d 685, 690 [83 P.2d 305].) ■ In ruling on the demurrer the court can take judicial notice of the resolution under which the hearing involved was conducted.

■ The reporter's transcript of the proceedings before the committee was received and considered by the trial court in connection with its ruling on the demurrer and admitted in evidence, showing that Rosenberg suffered no bodily injury at the hands of petitioner and that Rosenberg, after telling the Sergeant at Arms to ''take your hand off it,'' stated that he would give it (the paper) to him (Allen), which he did. Allen, as chairman of the committee, was, in our opinion, authorized to demand that the paper be shown to him inasmuch as the witness was referring to it and answering the questions from it. Allen was also authorized to direct the Sergeant at Arms to obtain the paper for inspection. Under these circumstances petitioner herein should not be subjected to the harassment and expense of defending himself in civil proceedings commenced by Rosenberg.

It is claimed by counsel for Rosenberg that the committee had no authority to conduct the hearing involved and was without legal standing. However, it is not the function of the courts to prescribe rigid rules for the Legislature to follow in drafting resolutions establishing investigating committees. That is a matter peculiarly within the realm of the Legislature and its decisions will be accepted by the courts up to the point where their own duty to enforce the constitutionally protected rights of individuals is affected. (*Watkins* v. *United States,* 354 U.S. 178, 204 [77 S.Ct. 1173, 1 L.Ed.2d 1273].)

Said Resolution Number 224 contains an avowal of contemplated legislation in respect to several subjects within the scope of prospective legislation and control within the meaning of article IV, section 37, of our state Constitution. The record before us shows that the Interim Committee was lawfully constituted by the assembly with power to conduct the investigation involved. (*In re Battelle,* 207 Cal. 227 [227 P. 725, 65 A.L.R. 1497].)

The demurrer herein should have been sustained without leave to amend and the Superior Court action dismissed. Let the writ of prohibition issue as prayed for in the petition.

Griffin, P. J., and Shepard, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied August 12, 1959. Peters, J., was of the opinion that the petition should be granted.