[Civ. No. 6301. Fourth Dist. Nov. 23, 1960.]

JUNE KNAPP, Appellant, v. CITY OF NEWPORT
BEACH et al., Respondents.

Benjamin Chipkin for Appellant.

Walter W. Charamza, City Attorney, for Respondents.

SHEPARD, J.—This is an action for declaratory relief, injunction and damages on account of alleged conspiracy of defendants in connection with enforcement by defendants of city ordinances and state laws regarding repair and maintenance of certain apartment and garage buildings in the city of Newport Beach, and a cross-complaint by the city of

Newport Beach seeking adjudication that said buildings are a public nuisance by reason of danger to public safety and health, and for an order compelling, in the alternative, either adequate repair or demolition of said buildings. Judgment was rendered against plaintiff, appellant herein, and in favor of cross-complainant, one of the respondents herein. Plaintiff appeals.

For clarity, plaintiff-appellant will hereinafter be referred to as "Knapp"; defendant and cross-complainant city of Newport Beach, respondent herein, will be referred to as "City"; and the individual defendants R. A. Glenn, D. P. Travis, and R. H. Keene, respondents herein, unless spoken of individually, will be referred to as "Officers."

In general substance, Knapp's complaint alleges, *inter alia,* ownership by her of an apartment and store building and a garage located in City; that Officers, acting as agents of City, posted notices on said buildings that said buildings were unfit for human habitation and their use was ordered discontinued; that the buildings were not, in fact, unsafe; that the actions of Officers and City were in pursuance of a malicious conspiracy to deprive Knapp of the use of said buildings; that Knapp was damaged in specified sums. City and Officers denied the essential allegations regarding conspiracy and damage, and alleged the truth of said noticed building defects. City filed a cross-complaint alleging, in general substance, *inter alia,* that the buildings constituted a public nuisance by reason of the danger to public safety and health through unrepaired dilapidations and defects in said buildings, and specified in detail the points in which the buildings were thus unsafe. Knapp denied some of the specified defects and admitted a portion. She also denied lack of safety.

■■ On appeal, all conflicts in the evidence must be resolved in favor of the judgment and, as stated in *Key* v. *McCabe,* 54 Cal.2d 736, 738 [1] [8 Cal.Rptr. 425, 356 P. 2d 169]:

". . . when a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact."

■ Findings of fact must be liberally construed to support the judgment. (*Johndrow* v. *Thomas,* 31 Cal.2d 202, 207 [5] [187 P.2d 681].)

Viewing the evidence and findings in this light, the testimony adduced in the lengthy trial shows that Knapp's apartment and store building was a multiple-storied, frame structure, 90 x 25 feet in area, containing seven rental apartments. It had been an old theatre building, built more than 40 years ago. It had been partly made over for use as rental apartments. When it first came to the attention of Officers in the latter part of 1957, Officers were unable to gain entrance for complete inspection, but their examinations from what they could see convinced them that the dilapidations required repair to make it safe for human occupancy. They posted a notice thereof on the building, first in January 1958, and later in April 1958, and still later after they had gained entrance for complete inspection through order of court, a notice dated August 13, 1958, containing 51 items of necessary repair, was given to Knapp. September 16, 1958, City filed a cross-complaint for abatement of public nuisance, hereinbefore noted.

These alleged items of defect in the apartment building, all of which were found by the court to be true, included exterior and interior plaster and stucco—the evidence showed approximately 200 square feet of plaster on walls and ceilings had actually fallen off while in other places plaster was separated from the lath, and thus in a condition where it might fall at any time; exterior lath nails rusted through; termite damage and dry rot had severely damaged or destroyed structural members—the evidence showed this to be true at several points in foundation timbers, in some places the wood was so badly damaged that it would disintegrate under the pressure of the inspector's fingers; fire escape ladder not secured to building—the evidence showed iron bolts attaching the ladder to the building completely rusted through; fire escape balcony improperly designed and unsafe—the evidence showed it was pulling away from the wall of the building and had sagged substantially; head room along first stair flight obstructed and too low—the evidence showed one head-clearance space on a stairway of less than 5 feet, besides obstructions that might be fatal in case of emergency or fire; transoms, stairways and certain hall doors and skylight not fire resistant; gas outlets without vents; hot-water heater improperly vented; various other specifications involved totally inadequate lighting in hallways; insufficient window area; rotten drainboard; toilet facilities in disrepair; fire hazard from debris accumulations; hazardous

electrical wiring; and inoperative roof drains. The judge, at the request of both parties, inspected the apartment building. This, of course, was evidence by itself sufficient to support the findings on physical defects, since, presumptively, the judge saw them.

In its judgment, the court declared the apartment building to be a public nuisance and unfit for human habitation. It enjoined the maintenance of such nuisance, ordered the repair of the building by the replacement of the structural timbers infested with fungus, dry rot and termites; support for the first floor the full length of the building; replastering of the interior walls and ceilings of the first floor, including a replastering of the north wall so as to make it one-hour fire resistant; the closing of all openings in the north wall (this wall separates the building from another building); reconstruction of the hazardous stair and landings to conform to existing code; reconstruction of skylight and shaft to meet code requirements; repair of fire escape and present balcony; replacement of both toilets to meet present sanitary requirements; closing of all existing openings from second floor into attic with one-hour fire resistant materials; proper vent for water heaters; replastering entire outside of building; renailing of lath where existing nails have rusted through; installation of exit signs; repair of roof leak and drains.

The judgment required these repairs to be commenced within 30 days and to be prosecuted continuously and diligently. Permission was given by the judgment, in lieu of such repairs, to demolish the building, commencing such demolition within 30 days. Knapp was permitted to apply to the court for an extension of time on notice and motion. She was required to secure a building permit and a use permit for the performance of said repairs.

### Findings Adequate and Sufficient

Knapp first complains that the findings are insufficient and inadequate and are general, vague, contradictory, and inconsistent, and particularly complains of findings 11, 17, 18 and 19. We cannot agree that the findings are insufficient, nor can we agree that they are inconsistent in any material respect.

The findings, in general, state the corporate existence of City, that the acts of Officers were done in their official capacities as officers and agents of City; that Knapp is the owner and in possession of the buildings involved; that the

apartment building was constructed about 1918; that officers Glenn and Keene, on January 15, 1958, and April 1, 1958, posted notices on said apartment of its unsafe condition; that Knapp was advised on April 2, 1958, and by various correspondence thereafter up to July 22, of this unsafe condition; that pursuant to court order a full inspection was made August 12, 1958. Paragraph 11 reads as follows:

"Except as hereinbefore affirmatively stated, the Court finds all of the allegations in the first cause of action in the complaint are untrue."

Paragraphs 12, 13 and 14 recite Knapp's ownership and possession of the garage and the posting of notice September 30, 1957, of its unsafe character. Paragraph 15 reads as follows:

"Except as hereinbefore affirmatively stated, the Court finds all of the allegations in the second cause of action in the complaint are untrue."

Paragraph 16 finds that the apartment was on the date it was first posted "and at all times since has been, a public nuisance, unsafe, dangerous, dilapidated, unsanitary, hazardous, in a state of disrepair, infested with termites and dry rot and unfit for human habitation." Paragraphs 17 and and 18 read as follows:

"Except as hereinbefore stated, the Court finds all of the allegations of the answer are true."

"Except as hereinbefore stated, the Court finds all of the allegations of the cross-complaint are true."

Paragraph 19 recites that the garage building, after the commencement of the action, was repaired without obtaining a building permit, and that the parties had agreed in open court that their differences on the garage building will be solved by Knapp applying for a building permit and making the work done on the garage building comply with the building code. The balance of the findings are that Knapp suffered no damage from City's actions, that the value of the apartment building is $2,500 and the cost of repairs will exceed $5,000.

The ultimate issues finally to be decided by the court in this cause were: (1) Did defendant City and Officers cause any damage to Knapp by their acts; (2) does the apartment constitute a public nuisance; and (3) does the garage building constitute a public nuisance?

Findings on evidentiary or immaterial issues are unnecessary and should be made only on ultimate facts. This

principle is so thoroughly established as to require little citation of authority. (2 Witkin, California Procedure, § 112, p. 1843; *Denbo* v. *Senness,* 120 Cal.App.2d 863, 869 [8, 9] [262 P.2d 31] ; *Siquig* v. *West Coast Pickle Co.,* 161 Cal. App.2d 254, 258 [7] [326 P.2d 596].) ▆▆ As was said by the Supreme Court in *Richter* v. *Walker,* 36 Cal.2d 634, 639-640 [1-6] [226 P.2d 593] :

''As to the principles governing appellate courts in considering the adequacy of findings to dispose of issues and support a judgment it is a general rule that 'Even though a finding might have been more clearly phrased, it is sufficient if its language is clear enough to indicate what the court intended; and if there are findings sufficient to support the judgment, they are not vitiated by the unintelligibility of others. ▆▆ Any uncertainty in the findings will be construed so as to support the judgment rather than to defeat it.' [Citation.] ▆▆ Even where findings are to some extent inconsistent a judgment may not be set aside unless the conflict is clear and material and the findings are incapable of being harmoniously construed. [Citations.] ▆▆ Furthermore, general findings that all the allegations or denials of a pleading are true except those as to which the court makes a specific finding, are upheld if by reference to the pleading the import of the finding is reasonably certain. [Citations.] ▆▆ It is also to be noted that while full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. [Citations.] ▆▆ And, of course, as to the sufficiency of evidence to support findings, it is the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the findings if possible.''

▆▆ Furthermore, as was said by the Supreme Court in *Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [3] and 584 [6] [349 P.2d 289] :

'' 'Appellate courts . . . if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical.' ''

▆▆ '' '. . . [H]owever lame, however inconclusive, any

number of the findings may be, if in any case there be one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded.' '' (See also *Bowyer* v. *Burgess,* 54 Cal.2d 97.101 [4] [4 Cal.Rptr. 521, 351 P.2d 793]; *Turnbull* v. *Thomsen,* 171 Cal.App.2d 779, 783 [3] [341 P.2d 69].)

With these principles in mind, a fair and realistic examination of the findings shows that the court's intention in these findings is crystal clear. It did find, unequivocally, not only the existence of the public nuisance and unsafe, dangerous, dilapidated, unsanitary and hazardous character of the building, but it also found true the probative facts of infestation with termites, dry rot, disrepair and all of the 51 items of defects set forth in the cross-complaint. It also found to be true the giving of all of the notices by which Knapp was fully apprised more than 30 days prior to the filing of the cross-complaint of the various defects charged. We do not wish to be understood as suggesting that the type of language used which inserts a possible negative pregnant is to be recommended, for under different circumstances and without specific findings such language might easily be confusing and defeat the judgment. However, from an examination of the entire findings in this cause, we are satisfied that the material issues are adequately and sufficiently covered.

We find no inconsistency between findings 18 and 19. Finding 18 relates to condition before the action was filed. Finding 19 explains merely that after the filing of the action the garage was repaired in some respects without permit and that such permit should have been obtained as required by the ordinance. This relates itself to a conversation between counsel in open court, near the close of the trial, wherein, after considerable discussion between court and counsel on the subject, counsel for City asked counsel for Knapp if he was willing to take out a building permit for repairs on the garage and do the repairs according to the building code, including cutting in the brace to the studs. The following then occurred:

"Mr. CLARK: Anything else?

"Mr. CHARAMZA: Nothing else.

"Mr. CLARK: Fine. We will apply for the permit and pay the fee for what we did do and for doing that, and go ahead and do it."

In view of this exchange which had the effect of disposing

of the garage dispute as far as further evidence was concerned, the court was entitled to rely on the statement of counsel and Knapp cannot properly complain.

Knapp also complains of alleged inconsistency in the findings relating to Knapp's payment of a business license fee and of a letter under date of July 22, 1958, from City to Knapp in which there were listing of defects by building code numbers. These were immaterial points not bearing on whether or not Knapp's buildings constituted public nuisances and what should be done about the abatement thereof. Immaterial inconsistencies are not grounds for reversal. (*Richter* v. *Walker, supra.*)

### UNIFORM BUILDING CODE

Knapp next complains that the uniform building code was not properly adopted by City and is void. City responds that it was operating under a constitutional charter and that such charter defines the method of adoption of City's ordinances, and it is therefore controlling, citing 34 Cal.Jur.2d 754, section 174. We find it unnecessary to pass on this contention. The uniform building code of City was introduced in evidence, without objection. This was not an oversight on Knapp's part as it was repeatedly referred to without contention in that respect in Knapp's pretrial memorandum. No objection or point relating to valid adoption of this code was ever presented to the trial court nor was any proof of invalidity or even suggestion of invalidity made during the trial. Ordinance Number 834 by which the code was adopted, was never placed in evidence. The ordinance was not subject to judicial notice.

Statements of alleged fact in the briefs on appeal which are not contained in the record and were never called to the attention of the trial court will be disregarded by this court on appeal. (*Lady* v. *Barrett,* 43 Cal.App.2d 685, 686 [1] [111 P.2d 702] ; *Gantner* v. *Gantner,* 39 Cal.2d 272, 278 [8] [246 P.2d 923] ; *Loving & Evans* v. *Blick,* 33 Cal.2d 603, 613-614 [204 P.2d 23] ; 3 Witkin, California Procedure, § 73, p. 2230.)

### USE PERMIT

Knapp next complains that the requirement of the judgment that Knapp obtain a use permit was error and that the evidence did not support the finding. Section 9105.7(g) of the zoning ordinance of City reads as follows:

"Ordinary maintenance and repairs may be made to any non-conforming building providing no structural alterations

are made and providing that such work does not exceed fifteen (15) percent of the appraised value in any one (1) year period. Other repairs or alterations may be permitted provided that a Use Permit shall first be secured in each case.''

Zoning regulations, of which this was a part, were introduced in evidence without objection. The court found the value of the building was $2,500 and that the cost of repairs would exceed $5,000. The evidence in this respect was conflicting, but the conflict was resolved against Knapp and in favor of City. It also found that repairs to the structural members of the building were necessary. It is thus apparent that necessary repairs involved were both structural and in excess of 15 per cent of the value of the building, and the zoning regulation above quoted would apply. The court's order for repairs was in the interest of Knapp in order that Knapp might not be compelled to demolish the building in order that the nuisance be actually abated. We think the court's order was amply clear for reasonable compliance.

We see nothing invalid or unreasonable in the court's requirement that the question of a use permit be subject to the legally exercised discretion of the zoning authorities of City. As hereinbefore noted, the zoning regulations were not before the court for the purpose of deciding whether or not Knapp would be entitled, mandatorily, to a use permit. These regulations were before the court solely for the purpose of showing that the apartment house was in some respects nonconforming and that some sort of use permit would, under the ordinance and regulations, be necessary. The question therefore is, in the first instance, one for the City zoning authorities. (*City of Los Angeles* v. *Gage*, 127 Cal. App.2d 442, 452 [12] [274 P.2d 34].) Thus, whether a permit should be issued for a particular use desired by Knapp, was not before the court and the court very properly refused to prejudge the question of whether or not a use permit should be granted, requiring only that such use permit be obtained in ordinary course. This is not a criminal case and the penalty clauses are not before us. If a use permit is arbitrarily and capriciously and without cause denied in the future, judicial redress is available.

FINDINGS 8 AND 9 ACCURATE BUT PROBATIVE
AND UNNECESSARY

Knapp next complains that the court erred in findings 8 and 9 that Officers Glenn and Keene found the apartment building unsafe for human habitation and posted the

notice thereof on said building January 15 and April 1, 1958. This was affirmatively alleged in Knapp's complaint and also in the cross-complaint, without denial. No examination of the evidence is necessary as it was admitted by the pleadings. A completely detailed inspection could not be had until an order therefor was finally made by the court on August 8, 1958. Full notice of the details of 51 defects was given by letter under date of August 13, 1958. Receipt of the letter was never denied by Knapp. The cross-complaint was not filed for more than 30 days thereafter. No complaint was made to the trial court of lack of notice in this particular respect.

The question of authority from the governing board of City for the commencement of the action was never challenged in the trial court, nor even suggested to it. We cannot now consider this point on appeal. (*Rau* v. *Redwood City Woman's Club*, 111 Cal.App.2d 546, 552 [5a, 6, 5b] [245 P.2d 12].) The case of *Armistead* v. *City of Los Angeles*, 152 Cal. App.2d 319 [313 P.2d 127], and other cases cited by Knapp are of no assistance. It is not here contended that Officers Glenn or Keene took any physical steps to close the building. They simply posted notices. The court, after a nine-day trial, with ample evidence and opportunity to Knapp to defend, found the facts supporting its declaration of a public nuisance. In any event, findings 8 and 9 relate to purely probative matter and were unnecessary.

### ABATEMENT OF PUBLIC NUISANCE NOT DEPENDENT ON DATE OF BUILDING CONSTRUCTION

Knapp next complains that because the building was constructed prior to the adoption in 1923 of the State Housing Act, no abatement can be had. Knapp misconceives the rules applying to abatement of public nuisances. A public nuisance, if found to exist, is a present danger to the public. It can be abated under the police power whenever discovered. The date of construction of the building or enactment of the law under which public authorities are proceeding is not the criterion. Retroactive effect is not sought. The present condition of danger to the public is the real criterion. (*Perepletchikoff* v. *City of Los Angeles*, 174 Cal.App.2d 697, 699 [1], 701 [2], 703 [4] [345 P.2d 261]; *People* v. *Vasquez*, 144 Cal.App.2d 575, 577 [1] [301 P.2d 510]; *Rau* v. *Redwood City Woman's Club, supra*, 552 [3, 4]; *People* ex rel. *Dept. of Ind. Relations* v. *Morehouse*, 74 Cal.App.2d 870, 874 [1] [169 P.2d 983]; *Baird* v. *Bradley*, 109 Cal.App.2d 365, 367 [3] [240 P.2d 1016].)

### SUPPLEMENTAL FINDINGS VOID

Knapp next complains that supplemental findings numbered 16a and 16b were erroneously filed. With this we agree. The findings and judgment were filed on March 31, 1959. On April 3, without any motion for a new trial having been made and without any order reciting or suggesting that material had been left out of the findings through inadvertence or clerical error, the court purported to sign and file what are entitled "Supplemental Findings of Fact." No motion appears to have been made by either party under Code of Civil Procedure, section 662. The procedure followed is not authorized, and such purported findings are of no force or effect. Code of Civil Procedure, section 663, does not authorize such additional findings, and findings may not be disturbed by the trial court after they have been filed and judgment has been entered thereon, except for misprision or on motion for a new trial under section 662. (*Jones* v. *Clover,* 24 Cal.App.2d 210, 212 [74 P.2d 517]; *Richter* v. *Henningsan,* 110 Cal. 530, 537 [42 P. 1077]; *Moklofsky* v. *Moklofsky,* 79 Cal.App.2d 259, 264 [4] [179 P.2d 628]; *Hole* v. *Takekawa,* 165 Cal. 372, 376 [132 P. 445]; *Waters* v. *Spratt,* 166 Cal.App.2d 80, 87 [332 P.2d 754]; *Stanton* v. *Superior Court,* 202 Cal. 478, 487 [261 P. 1001].)

However, this does not affect the judgment nor the findings which were, in fact, properly made. As has already been pointed out, the court did find on all the material facts necessary to support the judgment.

### CROSS-COMPLAINT PROPER

Knapp next complains that the cross-complaint was improperly filed in this cause, and that City did not plead authority from the city board to file the action. The complaint clearly related to and depended on the matters set forth in Knapp's complaint and affected solely the property referred to in Knapp's complaint. The material contained in the cross-complaint clearly served the purpose of permitting a complete determination of the questions and dispute between the parties mentioned in Knapp's complaint, thus avoiding circuity of proceedings. We think the matters therein contained were properly brought up under the authority of Code of Civil Procedure, section 442. (*County of Humboldt* v. *Kay,* 57 Cal.App.2d 115, 121 [7a, 8] [134 P.2d 501].)

The question of authority from the governing board of City was never at any time raised nor suggested to the trial court. We cannot now consider it on appeal.

The question of City's power to seek abatement of a public nuisance without reference to specific ordinances has been sufficiently treated under a preceding question.

PUBLIC OFFICERS' IMMUNITY

 The ruling of the trial court refusing to receive further evidence on Knapp's complaint charging conspiracy was correct. All of the pleadings, as well as Knapp's own complaint and answer to the cross-complaint, and also Knapp's offer of evidence, clearly and without contradiction showed that the actions of Officers and City were all taken in an official capacity and for the purpose of enforcing the city ordinances and the state law. This purpose was clearly within the scope of the official duties of Officers and City, and falls squarely within the governmental immunity rule already firmly established by the decisions in this state. (*Hardy* v. *Vial*, 48 Cal.2d 577, 582-583 [5-8] [311 P.2d 494] ; *Cross* v. *Tustin*, 165 Cal.App.2d 146, 149 [1, 2] [331 P.2d 785] ; *Martelli* v. *Pollock*, 162 Cal.App.2d 655, 658-659 [1-5] [328 P.2d 795] ; *Allen* v. *Superior Court*, 171 Cal.App.2d 444, 448 [1] [340 P.2d 1030].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.