Filed 6/12/15  Marriage of Adams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of JOSEPHINE ADAMS and CHARLES ADAMS. | D065890 |
| JOSEPHINE ALLEN, | |
| Respondent, | (Super. Ct. No. DN146892) |
| v. | |
| CHARLES ADAMS, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael D. Washington, Judge.  Affirmed.

Steven S. Kondo for Respondent.

Charles Adams, in pro. per., for Appellant.

Charles Adams (Charles) filed a postjudgment motion requesting the family court to order his former home sold and appoint an elisor to sign the necessary documents on

behalf of his former spouse, Josephine Allen (Josephine). After a hearing, the court denied the motion. Charles appeals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because the appellate record is devoid of many of the background facts, our factual summary is necessarily limited.

Charles and Josephine were previously married. In 2007 or 2008, the marriage was dissolved and final judgment was entered. In a prior proceeding, the court had awarded each party one-half of their family residence (Property) and required Charles to pay $600 in monthly child support for their daughter. The parties then continued living together and both paid the mortgage on the Property, but Charles did not pay the required child support.

In July 2009, Charles signed a quitclaim deed transferring his rights in the Property to Josephine. Two years later, the parties both moved from the Property, and Josephine rented the Property to third parties. In about 2013, Josephine moved back into the house.

In December 2013, Charles filed a motion in the family court requesting that the court order the Property "be listed for sale and any proceeds be split 50/50 . . ." and appoint an elisor to sign documents necessary "to effect the listing and sale of the community property." In support, Charles filed his declaration stating the court had

2

previously ordered the property sold.[1]  Charles acknowledged he had signed the

quitclaim deed transferring the Property to Josephine in 2009, but said the parties

intended the quitclaim deed to be only temporary, and that Josephine had promised to

reconvey the Property.  He said he signed the deed in 2009 because he needed surgery

and Josephine was concerned the hospital could place a lien on the Property.

Josephine filed an opposing declaration, denying that she had agreed to reconvey

the property.  Charles did not designate the declaration as part of the appellate record.

On February 4, 2014, Josephine and Charles appeared at court for a hearing on the

petition.  They declined to stipulate to a court commissioner, and the case was assigned to

Superior Court Judge Michael Washington for all purposes.  On that date, Judge

Washington held a hearing on Charles's petition.  At the outset of the hearing, both

parties were sworn as witnesses and both had the opportunity to present facts supporting

their positions.  Josephine was represented by counsel, and Charles was self-represented.

During Charles's presentation, he presented the following facts regarding the

Property.  After the separation and dissolution judgment, the parties both lived at the

Property with their 16-year-old daughter.  In 2009, Charles suffered a major foot injury,

and the hospital requested that he use his home as collateral for payment of the needed

surgery.  In response, Josephine told Charles to quitclaim the property to her to avoid any

liens being placed on the Property.  Josephine said she would reconvey the property after

the medical bills were "cleared."  Charles agreed to do so, and signed the quitclaim deed.

---

1    Charles did not file any supporting documentation showing a sale had been
ordered, nor have we found any such documentation in the appellate record.

But the next year, in early 2010, when Charles asked Josephine to reconvey the property, she refused and said Charles had given up his rights to the home. Two years later, in June 2011, the parties moved to separate locations and Josephine rented the Property to third parties. Josephine "has since remarried and moved back into the [Property]."

In response to the court's questions, Charles acknowledged that he signed the quitclaim deed in 2009 and, at the time he signed it, he knew it was a quitclaim deed. But he said he was "manipulat[ed]" into signing the deed because he needed foot surgery and the hospital required him to provide collateral before it would perform the surgery. When the court inquired why he would sign away title to the home if collateral was required, Charles responded that Josephine told him to deed the home over to her to avoid liens on the property. Charles said that Josephine told him, " '[a]fter you get past these bills or whatever, then I will sign it back over to you' " and she "assured" him she would reconvey the property to him. Charles also said that because of his foot injury he was "under . . . a stressful situation . . . [and that is the] reason why I signed over the home, I didn't do it voluntarily because I would have been out."

When the court asked for documentary evidence supporting his claims, Charles responded: "[o]nly thing that I have is her verbal [assurance]." Charles said: "[W]e just had a verbal . . . . Everything was verbal, your Honor, for the most part because . . . we were already living in the home . . . ." At one point during the hearing Charles said he did not know he was going to "need" supporting documents at the hearing, but then later reconfirmed he did not have any supporting evidence because the agreement was "verbal

4

. . . when somebody tells you, from eye to eye, 'I will sign this back over. I would never do that to you. I know that's your house.' "

Charles also testified that in 2010 he decided to "let it go" and allow Josephine to keep the home if she removed his name from the underlying loan. But she refused to do so. Charles acknowledged that the house is "under water," but said that a short sale would allow them to "get rid of it" and be finished with the loan.

Josephine did not testify at the hearing, but relied on her declaration and her counsel's arguments. As summarized by her counsel, in her declaration Josephine denied that she had agreed to deed the property back to Charles. She stated that until 2009, both parties paid mortgage payments. But in 2009 Charles stopped making these payments when he injured his foot. According to Josephine, the parties agreed that Charles would sign a quitclaim deed to Josephine in exchange for Josephine's agreement to allow him to continue living at the home without making the mortgage payments and her agreement not to enforce his outstanding child support obligations. Additionally, Josephine presented evidence that the amount owed on the secured promissory note was greater than the market value of the property.

After considering the evidence, the court found Charles failed to meet his burden to show he did not intend to permanently transfer title when he signed the quitclaim deed. The court reasoned that Charles had failed to present any documentary evidence supporting his claim and his credibility was suspect because he waited more than three years after Josephine refused to retransfer the property to bring his claim to court. The court stated: "[T]here [is] a properly legally executed quitclaim deed signed by [Charles

5

and Josephine] back in 2009," and "I don't find that there was any fraud that took place at the time that . . . induced [Charles] to sign that document. And as a result, I find that he gave up his interest in the property [and therefore] I can't grant [Charles's] request to sell the property because I find [he no longer has] an interest in it." The court rejected Charles's claim that he had been under a mental or health disability precluding him from understanding what he was doing when he signed the quitclaim deed.

The court later entered an order stating:

> "It is undisputed [Charles] signed the Quitclaim Deed, transferring title to [Josephine], and at the time, he knew he was signing a Quitclaim Deed, transferring title to Petitioner; [¶] There was insufficient evidence presented for the court to find fraud and to overcome the presumption of title; and [¶] Therefore [Charles] gave up his interest in the [Property] . . . , and has no interest in the [Property]. [¶] THEREFORE, . . . [¶] [Charles's] requests to list the residence for sale and to appoint an elisor are denied."

## DISCUSSION

### I. *Appellate Principles*

A fundamental rule of appellate review is that an appealed judgment is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid*.; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) If the judgment or order is correct on any theory, the appellate court will affirm it. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

To overcome this presumption, "a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564,

6

574; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) In doing so, an appellant must provide supporting citations to the factual record. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.) An appellant must also "support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).)

An appeal is not a second trial. The role of an appellate court is to determine whether any error occurred, and if so whether that error was prejudicial to the defendant. Absent a prejudicial error, a Court of Appeal cannot remand a matter for a new hearing, even if the appellant believes he or she could prevail if given a second chance. (See *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Additionally, when reviewing an appellate record, a Court of Appeal cannot reweigh the evidence. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) We are required to "resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Ibid.*) An appellate court " ' "must *presume* that the record contains evidence to support every finding of fact . . . ." ' [Citations.] It is the appellant's burden . . . to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

II. *Legal Principles Governing Quitclaim Deed*

A quitclaim deed passes title from the grantor to the grantee. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 239.) After the conveyance, the grantor no longer is an owner of the property. (*Ibid.*) A quitclaim deed creates a presumption that the title was conveyed to the grantee. (Evid. Code, § 662; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 496.) A party seeking to rebut this presumption must present clear and convincing evidence that the deed was not intended to convey title. (*Ibid.*) The issue of whether the evidence is sufficient to overcome the presumption is a factual question for the trial court whose determination will not be overturned on appeal if supported by sufficient evidence. (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 345; *In re Marriage of Broderick, supra*, 209 Cal.App.3d at p. 496.)

Although different presumptions may apply in transactions between husband and wife (see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 294), when Charles signed the quitclaim deed, the parties were no longer married and a final dissolution judgment had been entered. Thus, Evidence Code section 662's general title presumption applies here.

III. *Analysis*

Charles concedes he signed the quitclaim deed conveying title of the Property to Josephine. This created a presumption that Josephine held sole title to the Property. (Evid. Code, § 662.) The court made a factual finding that Charles did not meet his burden to rebut this presumption. The court found the evidence did not support Charles's claim that he signed the quitclaim deed under false pretenses or as a result of fraud.

8

Charles does not challenge the sufficiency of the evidence to support the court's finding. Instead, he raises several procedural issues. As explained below, none of these contentions support a reversal in this case.

Charles first contends he "feels" the court erred because the matter should have been heard by a court commissioner. He says, "The court may have made an error as the case was changed from a family law summary proceeding [before Commissioner Patti Ratekin] concerning the divorce decree . . . into a full trial [before Judge Washington] concerning the right of title deed thr[ough] quitclaim."

This contention does not show reversible error. The record affirmatively shows the parties declined to have the matter heard by a commissioner, and instead requested that it be heard by a trial judge. Additionally, the record does not show Charles raised any objection to Judge Washington presiding over the matter. Moreover, there is no possible prejudice resulting from the fact that a superior court judge heard the matter instead of a family law commissioner. At the evidentiary hearing, the court gave Charles substantial time to explain his contentions and present any evidence supporting those contentions. The court asked numerous questions, seeking to ensure that it understood the basis for Charles's claim and repeatedly asked whether Charles had any evidence to support his claim. The same evidence rules and proof burdens would have applied before the court commissioner. On this record, Charles's challenge to the trial procedure is without merit.

Charles next contends he was prevented from presenting evidence in support of his claim because he was given "misleading information." However, he does not cite to any

9

facts supporting this contention. Instead, he states—without providing any record citations—that individuals in a legal referral service and a family court facilitator's office told him he did not need evidence to support his claims, and that "all the documents he would need in court to present his case would be the divorce judgment from 2008."

This factual assertion is not properly before us. Matters raised for the first time on appeal cannot support a basis for reversing the judgment. (See *Knapp v. Newport Beach* (1960) 186 Cal.App.2d 669, 679; see also *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 337, p. 387.) If Charles believed he had been given improper advice regarding the need to provide evidence at the hearing, he was required to raise this issue with the trial court at the time of the hearing. There is no indication he did so. Moreover, even assuming he had raised this issue in the court below, the record does not show the individuals who purportedly gave him this advice were aware that Charles had signed a quitclaim deed in favor of his former wife.

Charles additionally argues that he was "hurt" by the court's order because he is no longer a coowner of the Property. However, to obtain a reversal of a court order on appeal, it is not enough to show a court order detrimentally impacted a party's interests. Rather, the appellant must show the court *erred* and that this error prejudiced the appellant's rights. In his appeal, Charles did not show any trial court error. Thus, the fact that the court's refusal to invalidate the quitclaim deed placed him at a financial disadvantage does not serve as a basis for reversal. Charles's claimed financial

10

disadvantage was not caused by a court error.  It was caused by his decision to execute and deliver the quitclaim deed.

Charles states he would "like to return to the Superior court, and be able to present the case with proper representation, and all necessary evidence to support his case." However, this court has no power to reverse the judgment and remand the case absent a showing of error and that the error caused a miscarriage of justice.  Charles has not identified any error committed by the court, nor does he claim that he was wrongfully prevented from submitting evidence at the hearing or from being represented by counsel.

As the moving party, Charles had the burden of proof and the burden to produce sufficient evidence to support his request that the court order the Property sold.  A party must present all available evidence at the time of the hearing.  A party is not entitled to present some evidence, and then seek a reversal on appeal by stating that he or she would like a second chance to present additional evidence.  Orders and judgments are final absent a showing of reversible error.

IV.  *Charles's Motion To Augment Record*

Nine months after the Clerk's Transcript was filed and several months after appellate briefing was complete, Charles moved to augment the record with a deed of trust purportedly signed by the parties on July 21, 2009.  We deny the motion as untimely.  Augmentation requests "made after a reasonable time has expired from receiving the [appellate] record . . . will be denied absent a strong showing of unusual or unavoidable circumstances giving rise to the delay."  (*People v. Preslie* (1977) 70 Cal.App.3d 486, 492.)  Charles provided no reasonable explanation for the delay.

11

Moreover, even if the request was timely, the deed of trust is not a proper subject of augmentation because it was not offered in the proceedings below, nor did Charles rely on this document to support his arguments in the trial court. A document can be properly augmented to the appellate record only if the item was filed or lodged in the superior court during the challenged proceedings. (Cal. Rules of Court, rule 8.155(a)(1)(A); see *Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at p. 444, fn. 3 ["Augmentation does not function to supplement the record with materials not before the trial court."].)

## DISPOSITION

Order affirmed. Appellant to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.